# CHARLESTON.

## GAINER *v.* GAINER.

Submitted June 9, 1887.—Decided November 19, 1887.

*(WOODS, JUDGE, absent.)

1. DISCONTINUANCE—REVIVAL—DEATH OF PLAINTIFF—SUGGESTION.

   G. files a bill to enforce a vendor's lien for the purchase-money on a tract of land. The defendants file answers denying material allegations in the bill, and numerous depositions are taken to sustain and to contradict these allegations, but, before the court renders its decree, the plaintiff dies, and at the instance of the defendants an order is entered suggesting the plaintiff's death on the record. No order was made at the next term of the court; but at the second term of the court next after that, at which the death of the plaintiff was so suggested on the record, no motion having been made that the suit proceed in the name of the representative of the plaintiff or any other party, and no application having been made for a *scire facias* to revive the suit, the court, at the instance of the defendants, entered an order which, reciting these facts, ordered that the suit be discontinued. After this order was entered, and the court had adjourned, administration was granted the estate of the deceased plaintiff by the clerk of a County Court; and, at the following term of the court in which said cause had been pending, the administrator of the plaintiff appeared, and filed a duly certified copy of the order appointing him administrator of the deceased plaintiff, and moved the court to revive said cause in his name as plaintiff, and to reinstate the same upon the docket of the court; but the court overruled his motion. *Held,* that the court did not err in the entering of said order suggesting the plain-

---

*Counsel below.

tiff's death, or said order of discontinuance, or in overruling the motion to revive said cause and reinstate it on the docket. (p. 393.)

2. REVIVAL.

If the plaintiff in a chancery cause dies, when the cause of action survives to his representatives, real or personal, such suit may be revived by bill of revivor, by *scire facias*, or by a simple motion that it proceed in the name of the representative of the plaintiff, made without any notice to the defendants. But the defendants may hasten the prosecution or discontinuance of such suit by suggesting the death of the plaintiff on the record, and, if no steps are taken to revive the suit in any of these modes at or before the second term of the court next after that at which there may have been a suggestion on the record of the death of the plaintiff, the court ought to enter an order discontinuing the suit; which order can never, after the adjournment of the court, be set aside, though the court may refuse to enter such order, or may set it aside, at any time during the term of the court, if good cause be shown why the suit should not be discontinued. (p. 396.)

*J. H. Woods* for appellant.

No appearance for appellee.

Statement of the case by GREEN, JUDGE:

This was a chancery suit brought by Bryan Gainer in the Circuit Court of Barbour county, in October, 1868, to enforce a vendor's lien on land in that county of $250.00 with interest on it from April 18, 1853, which he claimed was the balance due on a contract for sale of this land to George Gainer and John W. Gainer, which contract was dated April 18, 1851. The bill states this, and also many other matters, which rendered it necessary and proper to make the numerous parties named in it defendants to the suit. A number of the defendants filed answers denying material allegations in the bill. These answers were replied to generally, and a number of depositions were taken. It is unnecessary to state in detail the allegations or nature of these pleadings and proofs. On the second of March, 1883, this order was made in the cause: "The plaintiff in this cause having died, it is ordered that his death be suggested upon the record." At the next term of the court no order was entered in this cause; but at the second term of the court after this suggestion of the death of the plaintiff on the record, on November 2, 1883, this order was entered in this

cause: "It appearing to the court that the death of the plaintiff in this suit was suggested at the March term, 1883, of this court, and it not having been revived, it is ordered that the same be discontinued." At the next term thereafter, the record shows that on March 7, 1884, "the plaintiff, by his attorney, moved the court to reinstate this cause, which was discontinued at the last term; which motion was continued," but on the next day the order continuing this motion was set aside, and this order was entered: "The order entered in this cause at a former day of this term is set aside; and this cause having, by an order of the court, made at the October term, 1883, abated on account of the failure of the personal representatives of the plaintiff to revive the same in his name within two terms next after the suggestion of the plaintiff's death, made at the March term, 1883, this day came Hugh McQuain, sheriff of Gilmer county and as such administrator of the said Bryan Gainer, and filed a duly certified copy of the order of the County Court of Gilmer county, committing the estate of said Bryan Gainer to him as such administrator, marked 'X,' and moved the court to revive the said cause in his name as plaintiff, and to reinstate the same upon the docket of this court, of which motion the court takes time to consider."

The order of the County Court of Gilmer county referred to in this order shows that on the January 18, 1884, the estate of Bryan Gainer, deceased, was committed to Hugh McQuain, sheriff of Gilmer county, for administration. This order was entered on motion of Levi Johnson, and it recited that more than three months had elapsed since the death of Bryan Gainer, and no administration of his estate had before that been granted. On the twenty-fifth of October, 1884, the motion which had been made to revive the cause in the name of said administrator of Bryan Gainer, and to reinstate it on the docket of the court, was overruled by the court, as appears by an order of the court made on that day. From this order the said administrator of Bryan Gainer obtained an appeal to this Court.

*J. Hop Woods* for appellant.

No appearance for appellee.

GREEN, JUDGE:

The right to revive a cause in equity, as well as the mode of reviving it, is thus correctly stated by me in delivering the opinion of this Court in *Reid* v. *Stuart's Ex'r*, 20 W. Va. 391, 392: "Before the passage of any statute law, when a sole plaintiff died intestate, his representative, his administrator, or heirs, or both, if each was interested, had a right, by bill of revivor, to revive a cause, and proceed in it to a final decree. But, in such a case, this right of revival, if the cause of action itself survived, was absolute in the case supposed; and the parties filing the bill had only to prove that they were the representatives of the deceased, if this were denied, and the cause was, as a matter of course, revived. Both in England and in the various States of the Union, it was therefore wisely considered by the legislatures that, in such a case, it was entirely unnecessary to require the representatives of the deceased plaintiff to file a formal bill of revivor. In such cases, under the statute law of Virginia in existence prior to 1810, on the decease of the plaintiff his representative might revive a chancery cause by *scire facias*, without filing a formal bill of revivor; and this statute has been the law ever since, both in Virginia and this State. See *Vaughan* v. *Wilson's Ex'r*, 4 Hen. & M. 480; 1 Rev. Code Va. 1819, p. 497, § 38; Code Va. 1873, ch. 167, § 4; and Code W. Va., ch. 127, § 4. And in the case of the plaintiff's death it was provided by act of Virginia, passed March 7, 1826, (see Supp. Rev. Code, 130, 178,) that in a suit in equity, if the plaintiff died, the cause might, unless cause be shown to the contrary, be revived in the name of the administrator or heir, etc., on motion, without any notice; and this has continued the statute law of both Virginia and West Virginia, (Code Va. 1873, ch. 167, § 4; Code W. Va., ch. 127, § 4.) While, under these statutes, a bill of revivor has long been disused in Virginia and West Virginia, and, indeed, in England and various States of this Union, yet there is nothing in our statute law which prevents it from being used, if the parties entitled to revive a chancery cause, when the plaintiff dies, choose to resort to their bill of revivor."

So in like manner, formerly, when causes were pending in the Court of Appeals of Virginia, if the appeal abated by the

death of the appellant, it could be revived by *scire facias*. And such revival was formerly necessary, though, by our statute law, such revival is now unnecessary, but, in the discretion of the appellate court, judgment or decree may be entered as if the death of the appellant had not occurred, (see Code W. Va., ch. 127, § 3, p. 611;) and such had been the law since 1850, (see Code Va., p. 717, § 3.)   Before the passage of this law, a question arose under the old Virginia law whether, if an appellant died pending an appeal, and an entry was made of the abatement of the appeal on that account, the case could at a subsequent term be revived by a *scire facias*.   This question was first decided by the Court of Appeals of Virginia on March 29, 1808, in the case of *Gibbs* v. *Perkinson*, 2 Hen. & M. 211.   In that case, the court awarded a *scire facias* to revive the appeal, though the case had been entered as abated at the next preceding term by the death of the appellant.   In that case, the administrator of the deceased appellant had qualified since the case had been entered in the Court of Appeals as abated by the death of the appellant.   Judge Tucker "thought the writ of *scire facias* to revive the case might be awarded, and the appellee be at liberty to show cause upon the return against the revival of the appeal, and he should be willing to hear him."   Judge Roane "doubted whether such writ of *scire facias* could properly be granted."   But, as Judge Fleming concurred with Judge Tucker, the writ of *scire facias* to revive the appeal was awarded.   A few months afterwards this question came again before the Court of Appeals of Virginia, composed of the same judges, in the case of *Buster* v. *Wallace*, 3 Hen. & M. 217, decided November 16, 1808. In that case, the appeal had abated at the March term, 1808, by the death of appellant, and the next term after this March term commenced in April, only 15 days after the termination of this March term.   A *scire facias* to revive this appeal was awarded at the October term, 1808, the decision being rendered November 16, 1808; though there had been the intervention of the April term before the writ of *scire facias* had been asked, after the March term at which the appeal had abated because of the appellant's death.   This is the whole report of the action of the court: "Judges Tucker

and Fleming were of opinion that, in consideration of the short interval between March and April term, the motion might be granted to award the *scire facias* to revive the appeal, but were not disposed to extend the indulgence any further," and "Judge Roane was opposed to the motion."

The obvious difficulty in these cases was that, if the court had authority to award a *scire facias* to revive an appeal at a term subsequent to the entry of the abatement of the appeal by the death of the appellant, it would appear that such authority would exist after any lapse of time, for there was no statute then in force limiting the time. In the first case, a majority of the court issued such *scire facias* at the first term after the cause had been entered as abated by the appellant's death; and in the second case they issued such *scire facias*, even at the second term after the case had abated by the appellant's death, but they seemed to have based this judgment on the fact that it so happened that an extraordinarily short time intervened between the termination of the term in which the suit was abated because of the appellant's death and the next succeeding term of the court, and they say expressly that they will not extend the indulgence further. This matter was never again brought before the Court of Appeals of Virginia, so that the extreme limit determined by the court in which a *scire facias* would be awarded to revive a case in the appellate court was " at or before the second term next after that at which there had been a suggestion on the record of the death of the appellant, and an order of discontinuance or abatement of the appeal because of such death." This was, as we have seen, entirely changed by Code Va. 1849, which went into effect July 1, 1850. After that it became, as we have seen, unnecessary, in any case, to revive a case in the appellate court because of the death of the appellant, as the court in its discretion might enter judgment or decree in the case just as though the appellant had not died. See Code Va. 1849, ch. 173, § 3, p. 717. This statute law has since remained in force in Virginia as well as West Virginia. See Code 1868, ch. 127, § 3, p. 611. And since then cases have not been discontinued in the appellate court because of the death of the appellant, nor has it been usual to suggest on the record the death of the appellant.

But these decisions of the Court of Appeals of Virginia in 1808 had a controlling effect on the law of Virginia, by regulating the practice of the court in the revival and discontinuance of causes where the plaintiff in a chancery cause died, and of cases in the appellate courts where the appellant died, and also influencing subsequent legislation in reference to the revival and discontinuance of causes where the plaintiff in a chancery suit died.    As the statute law was in 1808, when these decisions were rendered, no distinction could be taken as to the rules to govern with reference to the abatement and discontinuance, as well as the revival of cases where the appellant died, and where the plaintiff in a chancery cause died. In either case, the death of the appellant or plaintiff in a chancery cause, as the case might be, was suggested on the record, and an order made discontinuing the case or cause, as the case might be, on that account. But these representatives of the appellant or plaintiff in the chancery cause might have a *scire facias* in either case awarded him, despite the entry of this order of discontinuance, " at any time at or before the second term of the court next after that at which such order was made ;" but after that time, if no such steps were taken, the case or cause could never be again revived.    While this practice, introduced by these decisions of the Court of Appeals of Virginia, rendered in 1808, was a practice which would have been more appropriately inaugurated by legislative acts, the decisions introducing it being Legislative in their character, yet the practice itself was regarded as so just to both the representative of the plaintiff as well as to the defendant, that in the revisal of 1819 the legislature adopted a practice, in reference to the revival and discontinuance of causes where the plaintiff died, which, while not in form the practice prevailing then under these decisions of the Virginia Court of Appeals, was really the same so far as the substantial rights both of the representative of a plaintiff or the defendants in a chancery cause was concerned, where the record shows that the plaintiff had died.    By chapter 128, § 38, vol. 1, pp. 497, 498, it was, among other things, enacted, " that when any personal action or suit in equity is now or shall be depending in any court of this common-

wealth, and either of the parties shall die before verdict rendered or final decree be had, such action or suit shall not abate if the same were originally maintainable by or against an executor or administrator, but a *scire facias* may be had against the defendant or his representative to show cause generally why said action or suit shall not be proceeded into a final judgment or decree." This was substantially the statute law as it had previously existed; but at the end of this thirty-eighth section of chapter 128 (see page 498) there was added for the first time this clause : " In any such action, real, personal, or mixed, and in any such suit in equity, when the demandant or plaintiff shall die before the verdict rendered or final decree as aforesaid, if the heir or devisee, executor, administrator, or other representative, of the deceased party, shall not appear and pray for such *scire facias* at or before the second term of the court next after that at which the death of such party shall have been suggested on the record, such action or suit shall be discontinued, unless good cause be shown to the contrary."

This has ever since, in substance, remained the statute law both in Virginia and West Virginia. In this State, it is now thus worded : " Or where the party dying is plaintiff or appellant, the person or persons for whom such *scire facias* might be sued out, may without notice or *scire facias*, move that the suit proceed in his or their name. In the former case, after service of the *scire facias*, or in the latter case, on such motion, if no sufficient cause be shown against it, an order shall be entered that the suit proceed according to such *scire facias* or motion." See Code W. Va. 1868, ch. 127, § 4, p. 611. And the clause with reference to discontinuance of a suit, inserted for the first time at the close of section 38, ch. 128, Rev. Code 1819, vol. 1, p. 498, is now thus worded : " If the committee, personal representative, heirs, or devisees of the plaintiff or appellant, who was a party, or of the decedent whose personal representative was plaintiff or appellant, shall not make that motion, or apply for such *scire facias*, at or before the second term of the court next after that at which there had been a suggestion on the record of the fact making such *scire facias* or motion proper, the suit of such plaintiff or appellant shall be dis-

continued, unless good cause be shown to the contrary."
See Code W. Va. 1868, ch 127, § 7, pp. 611, 612. The mean-
ing of these provisions of our statute law, and the practice
established by them, when the plaintiff in a chancery cause
dies, with reference to the revival of the cause in the name
of his representative, or a discontinuance of the cause, as
the case may be, appears to me to be clear. This practice
is, if the plaintiff in a chancery cause die before final decree,
and the character of the demand set up in the bill was not
such that it terminated with his death, but was such that
it would survive and continue to a representative of the
plaintiff, such representative could at any time have the suit
revived by a bill of revivor, or by a statute law of Virginia
passed at a very early period, by a writ of *scire facias*, and by
a statute passed March 26, 1826, (see Supp. Rev. Code, pp. 130,
178,) by a motion without notice. And this is still our law.

But as the representative of the plaintiff might delay in-
definitely the revival of a chancery cause in any mode, under
the practice which grew up, and as a necessary sequence
of the decisions rendered by the Court of Appeals of Vir-
ginia in 1808 of *Gibbs* v. *Perkinson*, 2 Hen. & M. 211, and
*Buster* v. *Wallace*, 3 Hen. & M. 217, the defendant might
hasten the revival of a chancery cause by the representative
of a deceased plaintiff by suggesting his death on the record,
and by having an order made abating or discontinuing the
cause for that reason. But, though this might be done,
the representative of the plaintiff would be still awarded a
*scire facias* to revive the cause, provided he applied there-
for at or before the second term of the court after there had
been a suggestion of the plaintiff's death entered of rec-
ord, and the cause ordered to be abated or discontinued
therefor ; but such order of abatement or discontinuance
would forever end such cause if such *scire facias* to re-
vive it was not awarded the plaintiff's representative, at
or before the second term of the court after the term
at which such order of abatement or discontinuance was
entered or unless on the hearing of such *scire facias*,
the court refused to revive the cause in the name of the
plaintiff's representative. These rights of the representative
of the plaintiff, as well as of the defendant, were left sub-

stantially unaltered by the provisions we have quoted from the thirty-eighth section of chapter 128, Rev. Code 1819, vol. 1, pp. 497, 498.

The defendants in a chancery cause could, under this stat-ute still in effect, hasten the revival of a chancery cause by the plaintiff's representative, not, as formerly, by suggest-ing the plaintiff's death, and at the same time having an order made abating or discontinuing the cause, but simply by suggesting on the record the plaintiff's death. If the plaintiff's representative did not then take steps to revive the action at or before the second term of the court thereafter, or show good cause why it should not be discontinued, the court would enter an order discontinuing the cause; and after the termination of this term, in which this order of dis-continuance was entered, the representative of the plaintiff could never revive the cause in any manner, but it was finally ended. So that, in fact, both before and after the Re-vised Code of 1819, a chancery cause could be proceeded in by the plaintiff's representative, provided he took steps to revive it within two terms after the term at which the death of the plaintiff was suggested by the defendants on the record.

After the passage of the law in the Revised Code of 1819, the entry that the cause was discontinued was not made until the second term after such term, after the suggestion of the plaintiff's death on the record; whereas before 1819, the order of discontinuance was made when the suggestion of the plaintiff's death was made on the record; but such order of discontinuance became inoperative, just as though it had not been entered, provided the plaintiff's representa-tive took proper steps to revive the cause in his name before or at the second term of the court after such suggestion of the plaintiff's death was made. So that, in substance and effect, neither the rights of the plaintiff's representative, nor of the defendant, in a chancery cause, were materially en-larged or contracted by those provisions of section 38, ch. 28, Rev. Code 1819, vol. 1, pp. 427, 428. If this be so, it would seem clear that, if the death of the plaintiff in a chancery cause is suggested on the record, the representative of the plaintiff must in every case, when the revival of the cause is necessary, take steps to revive it by filing a bill of

revivor, by asking a *scire facias* to revive it in his name, or by making a motion that the cause be proceeded with in his name, before the end of the second term after the death of the plaintiff has been so suggested of record; or the cause should be entered as discontinued then, unless good reason be shown to the contrary. And when a revival of the cause is necessary, as it can never thereafter be had, it is necessarily at an end at the close of such second term; but as every order entered during the term is regarded as in the breast of the court till the end of the term, and may therefore be set aside at any time during the term, it is not improper to enter such order of discontinuance.

But it is claimed that such order of discontinuance may be set aside as a matter of course at any day during the second term of the court after the order suggesting the plaintiff's death has been entered; if the representative of the plaintiff appears during the same term and applies for a *scire facias* to revive the cause, or makes a motion that the suit proceed in his name, or shows cause for so doing. But it is claimed that this order of discontinuance can not properly be made till at the third term of the court next after that at which there may have been a suggestion made of record of the plaintiff's death.

This claim seems to be in direct conflict with the very words of the statute, which would seem clearly to confine the representative of the plaintiff to this second term of the court to revive the cause, and, if it be not then revived, the statute declares that the suit shall be discontinued, unless good cause be shown why that should not be done. This can only mean discontinuance by order of the court during the second term after the plaintiff's death has been suggested of record. It can not mean during the third or any future term of the court, for the very wording of the statute shows that the right of the plaintiff's representative to revive the suit whenever, from its nature, a revival is necessary, and an entry discontinuing it is entered, is limited to "at or before the second term of the court next after that at which there may have been a suggestion on the record of the plaintiff's death."

But it has been suggested that if my construction of this

seventh section of chapter 127, Code W. Va. 1868, pp. 611, 612, be right, the right of the defendant or appellee, at the close of this second term after the term at which the death of the plaintiff or appellant was suggested, to have an order made discontinuing the cause, would in every cause be absolute, and no meaning could then be attached to the concluding words of this seventh section: "The suit of the plaintiff or appellant should be discontinued, *unless good cause be shown to the contrary.*" No such difficulty presents itself to my mind, for there is no ground for the assumption that the court can not, when asked by the appellee or by the defendant in a chancery cause to enter it as discontinued at the close of the second term after the suggestion of record of the death of the appellant or plaintiff, exercise any discretion, but is bound in every case in the appellate court, and in every chancery cause, when so asked, to enter it as discontinued. So far from this being so, it is obvious that in very many cases the appellate court, when asked by the appellee, on or after the close of the second term after the appellant's death has been suggested of record, to discontinue the case as abated, would decline to do so, and would ordinarily regard the mere fact that the case was in the appellate court, and had finally been decided by the court below when the appellant died, as a sufficient reason for declining to discontinue the case.

That the appellate court has a very broad discretion, in all such cases as to whether it will discontinue a case, is obvious from the third section of chapter 127, Code 1868, p. 611, which is as follows: " If, in any case of appeal, writ of error, or *supersedeas* which is now or may hereafter be pending, there be at any time in an appellate court suggested or relied on, in abatement the death of a party, or any other fact which, if it had occurred after verdict in an action, would not have prevented judgment being entered, (as if it had not occurred,) the appellate court may, in its discretion enter judgment or decree in such case as if said fact had not occurred." There is therefore not the least difficulty in giving effect to the closing words of the seventh section of chapter 127, Code W. Va. 1868, p. 612, " unless good cause be shown to the contrary," when applied to the discontinuance of the suit of the appellant, whose death has been suggested. For the

right of the appellees to have suit discontinued because of the death of the appellant is by no means absolute; in fact, it is never absolute, and of course "good cause can be shown to the contrary." It is true, the right of a defendant to have a chancery cause discontinued at the end of the second term after the plaintiff's death has been suggested of record, when the plaintiff's representative has taken no steps to have it revived, is much stronger than the right of an appellee to have a suit discontinued for such reason. Still the defendant's right is not in every case absolute, but a case can be imagined in which the defendant would have no right; in other words, a case "in which good cause might be shown to the contrary." In fact, causes do occur where no revival of a case is necessary because of the plaintiff's death; and in such cases, of course, an order to discontinue the cause ought not to be made, because the death of the plaintiff has been suggested on the record, if no steps have been taken to revive the cause till after the second term of the court thereafter.

I deem it here sufficient to refer to some text-books for instances in which a revival of a chancery cause is not deemed necessary because of the peculiar character of the cause. One is in the case of trustees and executors, when one dies, not having possessed any of the property in question, or done any act relating to it which may be questioned in the suit. Again, where the suit is by husband and wife in right of the wife, and the husband dies under circumstances which admit of no demand by or against his representative; or when one of several creditors, suing on behalf of himself and other creditors, dies; or when one of several joint-tenant plaintiffs dies; or when, after a decree, that defendant should interplead the plaintiff in a bill of interpleader, dies,—in these causes, and doubtless in others, the character of the suit itself would be "good cause shown why the suit should not be discontinued because of the plaintiff's death, which had been suggested of record." See, for causes where there is no necessity to revive certain causes on account of the death of the plaintiff, Story Eq. Pl., §§ 354, 356, 362, and from section 364 to section 369; also Bart. Ch. Pr., pp. 294, 295, § 100.

It seems to me, therefore, that the construction I give section 7, chapter 127, Code W. Va., pp. 611, 612, cannot be escaped by saying that the closing words of this section, "the suit of the appellant or plaintiff shall be discontinued, unless good cause shall be shown to the contrary," must mean, "unless good cause shall be shown at a future term why the representative of the plaintiff had not, in the time required by the statute, taken steps to revive the cause." It is obvious that the statute means that the order of discontinuance shall be made unless, *then*, good. cause be shown why it should not be made. And we have seen that there is no difficulty in some cases, from the very nature of the suit, in *showing*, *then*, good cause why the case should not be discontinued because of the appellant's or plaintiff's death, though their representatives have taken no steps in the time named in this statute to revive the case.

There is no difficulty in applying the law as we have laid it down to the case before us. In the first place, the suit was brought to enforce a vendor's lien, and, of course, was one which, on the death of the plaintiff, would survive to his personal representative. His death was suggested on the record on March 2, 1883. The next term of the Barbour Circuit Court, in which this suit was pending, commenced on the sixth day of July, 1883. No order was entered in this cause during this term; but, at the second term after the death of the plaintiff was suggested of the record, that is, on November 2, 1883, an order was entered discontinuing the cause, because it appeared to the court that the death of the plaintiff had been suggested two terms before, at the March term, 1883, and the cause had not been revived, and no cause was shown why it should not thus be discontinued. And at the March term, 1884, the personal representative of the plaintiff moved the court to revive the cause in his name, and to reinstate the same upon the docket. This motion, after due consideration, was on October 25, 1884, overruled.

It is obvious that, if my views of the law be correct, these various orders of the court were correct; and this order of the court, overruling this motion of the appellant, on October 25, 1884, must be affirmed, and the appellees must recover of the appellant, to be paid out of the funds of the in-

testate in his hands to be administered, their costs in this Court expended, and $30 damages.

AFFIRMED.

# CHARLESTON.

