VERA BLOYD *et al., etc. v.* JESSIE H. SCROGGINS *et al.*

(No. 9169)

Submitted April 8, 1941. Decided April 29, 1941.

McCamic & Clark and W. R. Tinker, Jr., for appellants.
Martin Brown, Lloyd Arnold, Evans & Evans and W. A.
McGlumphy, for appellees.

LOVINS, JUDGE:

Plaintiffs appeal from a final decree of the Circuit Court of Ohio County entered on November 16, 1940, discontinuing their suit on the grounds that an order of revival had not been entered within two terms next after the suggestion of the death of the former plaintiff, John A. Bloyd, may have been made on the record. Code, 56-8-8.

This suit was commenced in the Circuit Court of Marshall County to settle the estate of Allen C. Scroggins, "to

make assets" out of which to pay debts owed by Allen C. Scroggins at the time of his death; to appoint a special receiver; to set aside and cancel a release made by the Bank of McMechen, and for other purposes. The Judge of the Circuit Court of Marshall County being ineligible to hear and decide the suit, it was removed to the Circuit Court of Ohio County. The suit was originally styled John A. Bloyd, Plaintiff, v. Jessie H. Scroggins, et al., Defendants. The style of the suit was changed to Vera Bloyd, William N. Bloyd and Charles A. Bloyd, Co-administrators of the personal estate of John A. Bloyd, deceased, v. Jessie H. Scroggins, individually and as executrix of the estate of Allen C. Scroggins, deceased, et al. This change depends upon whether the cause was properly revived after the death of John A. Bloyd. John A. Bloyd will be hereinafter alluded to as "Bloyd"; Allen C. Scroggins as "Scroggins"; and Vera Bloyd, William N. Bloyd, and Charles A. Bloyd as "plaintiffs."

At the time of his death, which occurred on January 30, 1937, Scroggins was indebted to the Mercantile Banking and Trust Company in the amount of $17,500.00 on two notes, one for $9,500.00 and the other for $8,000.00. Scroggins had been indebted to the Bank of McMechen on another note in the amount of $3,000.00. Bloyd was an indorser on the $8,000.00 note held by the Mercantile Banking and Trust Company; also on the $3,000.00 note held by the Bank of McMechen.

By reason of the indorsement of the two notes Bloyd faced a liability of $11,000.00. In his bill of complaint, Bloyd alleges that Scroggins and his wife, Jessie H. Scroggins, in order to secure him against liability, made a note for the sum of $11,000.00, payable to themselves or order, and secured it by a deed of trust; that the note and deed of trust were delivered to him; that the deed of trust conveyed the east one-half of Lot No. 117 Elizabeth Tomlinson Addition to Elizabethtown and certain articles of furniture and jewelry to T. S. Riggs, trustee; that the note for $11,000.00 and the deed of trust were thereafter delivered to the Bank of McMechen as collateral security for a note in the sum of $5,000.00 made by Scroggins and

held by said bank; that he, Bloyd, notified the bank of his ownership of the $11,000.00 note; and that his interests were continuing for the purpose of his protection; that notwithstanding the knowledge of the Bank of Mc-Mechen of his rights, the bank, without his knowledge or consent, released the deed of trust securing the payment of the $11,000.00 note; and that the bank surrendered the note for $3,000.00. These allegations are denied by Jessie H. Scroggins, Elmer F. and Bessie Grissell and the Bank of McMechen.

After the Bank of McMechen released the deed of trust aforesaid, Scroggins executed other trust deeds conveying the aforesaid Lot No. 117, which trust deeds have been released. After the death of Scroggins, Jessie H. Scroggins conveyed Lot No. 117 to W. K. Steele, who, in turn, conveyed it to Elmer F. and Bessie Grissell, who now claim ownership thereof.

Jessie H. Scroggins, individually and as executrix of the estate of Scroggins, filed her joint and several demurrers to the bill of complaint. The demurrers were overruled and she filed her joint and several answers. Other defendants filed their answers denying that Bloyd had any interest in the $11,000.00 note or any lien created by the deed of trust. Bloyd demurred to the answers, which demurrer was overruled and the case was set for hearing on May 23, 1939.

The regular terms of the Circuit Court of Ohio County commence on the second Mondays in January, April and September. Code, 51-2-1a. Bloyd died on May 19, 1939, and on May 23, 1939, both of which dates were during the April Term, 1939, of the Circuit Court of Ohio County, counsel for Jessie H. Scroggins tendered a writing in the form of an order, stating that Bloyd had died. Objection was made to the entry of said writing as an order of court. Two days later, and during the April Term, 1939, counsel for Bloyd likewise tendered a writing similar to the writing tendered by counsel for Jessie H. Scroggins. Neither writing was endorsed for entry, and, so far as the record shows, no action was taken thereon by the Circuit Court of Ohio County.

At the September Term, 1939, an order was entered which reads: "On a former day, to-wit, on May 23, 1939, came the attorneys for John A. Bloyd, the plaintiff herein, and suggested to the court that the said John A. Bloyd had departed this life on May 19, 1939, and thereupon this cause is continued for revival as provided by the Code of West Virginia." At the April Term, 1940, which was two terms after the suggestion of the death had been made on the record, counsel for plaintiff entered an order reviving the suit in the name of Vera Bloyd, William N. Bloyd, and Charles A. Bloyd, as Co-administrators of the estate of Bloyd. At the September Term, 1940, counsel for plaintiffs filed an amended bill of complaint in the names of the plaintiffs. Later in the same term, Nevada Riggs, executrix of the estate of T. S. Riggs, appeared specially and moved that this cause be dismissed because the order of revival came too late. Mercantile Banking and Trust Company, Bank of McMechen, Elmer F. and Bessie Grissell joined in the motion. The named defendants contend that the suggestion of the death of Bloyd was made at the April Term, 1939, in open court, and that the order of revival entered at the April Term, 1940, was not timely and is contrary to the provisions of Code, 56-8-8. This contention was upheld, and a final decree was entered discontinuing the suit, from which decree plaintiffs appeal.

The appellees assign as cross error the ruling of the trial chancellor on the demurrer to the original bill of complaint. An amended bill was filed by the plaintiffs, which has not been tested by a demurrer. The plaintiffs assign as error in their reply brief the ruling of the trial chancellor on the demurrers to the answers of Jessie H. Scroggins, Elmer F. and Bessie Grissell and Bank of McMechen. Code, 58-5-3, requires the assignments of error to be made in a petition for an appeal. Rule II of this Court is explicit that a petition for an appeal must assign errors. Therefore, we express no opinion as to the rulings of the trial chancellor on the demurrers to the original bill and the answers.

The trial chancellor in his memorandum of opinion

says that the order entered at the September Term, 1939, has the appearance of a *nunc pro tunc* order. This is not sufficient to make it such. The recital: "On a former day, to-wit, on May 23, 1939, came the attorneys for John A. Bloyd, the plaintiff herein, and suggested to the court that the said John A. Bloyd had departed this life on May 19, 1939, * * *" is not a sufficient *nunc pro tunc* entry of the suggestion of the death of Bloyd as of the April Term, 1939. According to the record, the attorney for Bloyd did not appear in court on May 23, 1939, but mailed a letter on May 25, 1939, which letter contained the order prepared by plaintiff's counsel hereinbefore mentioned. There is nothing in the record to show that the Circuit Court of Ohio County took any action or directed the entry of any order suggesting the death of Bloyd at the April Term, 1939. The trial chancellor in his memorandum states that neither the letter written by Bloyd's counsel on May 25, 1939, nor the order mentioned therein was presented to the court. The purpose of a *nunc pro tunc* order is to make the record speak the truth. "An entry nunc pro tunc is an entry made now of something which was previously done to have effect as of the former date, the function, object, or purpose of such entry being to make the record speak the truth; to supply on the record something which has actually occurred, but has been omitted from the record through inadvertence or mistake. * * * It is not, on the other hand, the function of such entry by a fiction to antedate the actual performance of an act which never occurred; or to supply an entire omission to act within the time limit for such action; * * * or to make the record show that which never existed, * * *." 21 C. J. S. title Courts, Sec. 227.

No minute or other record was made at the April Term, 1939, and no entry made on any quasi-record of the Circuit Court of Ohio County. This state of affairs does not warrant the entry of a *nunc pro tunc* order as of the April Term, 1939, nor does it give the order entered at the September Term, 1939, a *"nunc pro tunc"* effect. *Monongahela Railway Co.* v. *Wilson,* 122 W. Va. 467, 10 S. E. (2d) 795. There must be some decision or action of

the court and a minute thereof made before a *nunc pro tunc* order can be entered. *Scott* v. *Newell,* 69 W. Va. 118, 70 S. E. 1092. Where the court has wholly omitted to make an order which it might or ought to have made, it cannot afterwards be entered *nunc pro tunc. Payne* v. *Riggs,* 80 W. Va. 57, 92 S. E. 133. The mere announcement of the presiding judge of his opinion to take action without an order or direction to the clerk to enter judgment accordingly is not sufficient to warrant the entry of a *nunc pro tunc* order. *Vance* v. *Railway Co.,* 53 W. Va. 338, 44 S. E. 461. "In judicial proceedings nothing is to be left to unrecorded memory, and the record must speak by and for itself without the aid of oral proof or human recollection, and must be so complete that the succeeding officer coming into the place of the officer before whom the business was transacted cannot reasonably mistake what was done." *McDonald* v. *Crawford,* (Ala.), 180 So. 130. It is a trite saying that courts speak only through their records, and actions or facts do not exist as a matter of law unless shown thereby. *Charleston Trust Co.* v. *Todd,* 101 W. Va. 31, 131 S. E. 638; *Meyers* v. *Washington Heights Land Co.,* 107 W. Va. 632, 149 S. E. 819.

We therefore hold that there was no order entered at the April Term, 1939, and furthermore that there was no action taken at said term on which a *nunc pro tunc* entry suggesting the death of Bloyd could have been made, and that the recital of the order entered by Bloyd's counsel at the September Term, 1939, hereinbefore quoted, may be treated as surplusage, and of no effect as a *nunc pro tunc* entry. It is plain, however, that said order is an effective and sufficient suggestion of the death of Bloyd as of the September Term, 1939.

A comparison of Code, 56-8-8, with the statute dealing with the same subject matter as it appears in Chapter 127, Section 7, Code, 1868, shows that the material parts thereof are identical. In the case of *Gainer* v. *Gainer,* 30 W. Va. 390, 4 S. E. 424, the Court in interpreting and applying the statute here under consideration held, in effect, that the purpose of the statute was to hasten the revival and prosecution or the discontinuance of a suit

which had abated by the death of the plaintiff. If the defendant desires to prevent delay, he may enter a suggestion of death of the plaintiff; or the person who succeeded to the rights of the plaintiff may do so, and at or before the second term of court next after such entry it becomes necessary that an order of revival be made, otherwise the suit or action is discontinued. While the Court in the case of *Gainer* v. *Gainer, supra,* does not expressly so state, the reasoning is based upon the fact that the suggestion of the death of plaintiff had been made of record, thus bringing into operation the time element in the statute, which elapsed without an order of revival being made, and therefore the suit was discontinued.

The meaning of the statute here under consideration is obscured by the use of the words "at or before the second term of the court next after that at which there may have been a suggestion on the record of the fact making such scire facias or motion proper." This language, read in connection with the other parts of the statute, does not obviate the necessity of the actual entry of record suggesting the death of a plaintiff or appellant. The statute is remedial in nature, relates to procedure, and therefore it should receive a liberal construction in order to carry out its purpose, and especially, so that a more effective and speedier administration of the law may be obtained. Crawford on Statutory Construction, Section 254. Reference should be made to the subject matter and the purpose of the statute in order to reach the proper construction thereof, and the whole statute should be considered. Lewis' Sutherland Statutory Construction, 2nd Ed., Sections 368, 376.

Code, 56-8-8, is in the nature of a statute of limitations. Its purpose is to speed litigation, to prevent delay by reason of the death of a plaintiff or appellant. But if a defendant or appellee desires to obtain the benefit of this statute, it is his duty to see that a suggestion of the death of his opponent is, in fact, entered of record in the court where the litigation is pending, and until such entry is made the time element in the statute does not become operative.

We say that the order of revival entered at the April Term, 1940, was within the two-term period, and that there is no discontinuance of this cause by reason of the death of Bloyd.

The final decree of the Circuit Court of Ohio County is reversed and the cause remanded.

*Reversed and remanded.*

KENNA, PRESIDENT, concurring:

I do not believe that the use of an order *nunc pro tunc* is within the contemplation of Code, 56-8-8, which distinctly requires the suggestion to have been "on the record" in order to commence the period after which a statutory order of revival is not permitted. That section deals with the conduct of litigants: not that of the court. In order that "he who runs may read" the statute makes the suggestion a part of the proceedings, with the result that all parties are charged with notice of what took place. To permit constructive notice to become operative retroactively by virtue of an order entered *nunc pro tunc,* it seems to me, is to deny the necessity of the existence of the fact upon which its being, in this instance, rests, namely, the actual entry of an order "on the record." The effect of the order under the statute is to place the adversaries of the person making the suggestion upon terms as the result of an *ex parte* appearance. To my mind, it is a misinterpretation of the statute to indicate, if not to hold, that such a result can be brought about by an order entered *nunc pro tunc.* The suggestion either is or is not on the record, gauged by the simple inquiry of whether it is contained in an order duly entered of record as of the time it speaks.

Otherwise I am in entire accord with the Court's opinion.