# MARTIN'S ADMINISTRATOR *v.* BALTIMORE AND OHIO RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF WEST VIRGINIA.

No. 67.  Argued November 6, 1893. — Decided February 5. 1894.

Under the provision of the act of March 3, 1887, c. 373, authorizing an
action, brought in a court of a State between citizens of different States,
to be removed into the Circuit Court of the United States "by the de-
fendant or defendants therein, being nonresidents of that State," a
defendant corporation must be created by the laws of another State
only, in order to entitle it to remove the action; and if it is such a cor-
poration, and has not been also created a corporation by the laws of the
State in which an action is brought against it by a citizen thereof, it
may remove the action, even if it has been licensed by the laws of the
State to act within its territory, and is therefore subject to be sued in
its courts.

Statutes of a State, creating railroad corporations, or licensing them to
exercise their franchises within the State, if deemed by the courts of the
State public acts of which they take judicial notice without proof, must
be judicially noticed by the Circuit Court of the United States sitting
within the State, and by this court on writ of error to that court.

The Baltimore and Ohio Railroad Company is a corporation of the State of
Maryland only, though licensed by the State of West Virginia to act
within its territory, and liable to be sued in its courts; and may therefore
remove into the Circuit Court of the United States for the District of
West Virginia an action brought against it in a court of the State of
West Virginia by a citizen thereof.

Under the provision of the act of March 3, 1887, c. 373, by which a petition
for the removal of an action from a court of a State into the Circuit
Court of the United States is to be filed in the state court at or before the
time when the defendant is required by the laws of the State, or by rule
of the state court, "to answer or plead to the declaration or complaint of
the plaintiff," the petition should be filed as soon as the defendant is re-
quired to make any defence whatever, either in abatement or on the
merits, in that court.

The objection that the Circuit Court of the United States has no jurisdic-
tion of a case removed into it from a state court, because the petition
for removal was filed too late in the state court, is waived if not taken
until after the case has proceeded to trial in the Circuit Court of the
United States, and cannot be taken for the first time in this court on writ
of error to that court.

The question, whether a cause of action survives to the personal repre-
sentative of a deceased person, is a question not of procedure, but of
right; and, when the cause of action does not arise under a law of the
United States, depends upon the law of the State in which the suit is
brought.

By the law of West Virginia, an action for a personal injury abates by the
death of the person injured.

If, after verdict and judgment for the defendant in the Circuit Court of the
United States in an action the cause of which does not survive by law, and
pending a writ of error in this court upon the plaintiff's exceptions to
the rulings and instructions at the trial, the plaintiff dies, the action
abates and the writ of error must be dismissed.

THE case is stated in the opinion.

*Mr. Daniel B. Lucas* for plaintiff in error.

*Mr. John K. Cowen* for defendant in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action of trespass on the case, brought March
1, 1888, in the circuit court of Berkeley County in the State of
West Virginia, by John W. Martin against the Baltimore and
Ohio Railroad Company, to recover damages in the sum of
$10,000 for personal injuries caused to the plaintiff by the
defendant's negligence at Bayview in the State of Maryland
on May 22, 1887.

On April 12, 1888, the defendant filed in that court a peti-
tion, with proper affidavit and bond, for the removal of the
case into the Circuit Court of the United States for the District
of West Virginia, upon the ground that at the commencement
of the suit and ever since the plaintiff was a citizen of West
Virginia and the defendant a corporation and citizen of Mary-
land. On April 24, 1888, the plaintiff was permitted by the
state court, against the defendant's objection, to file an answer
to the petition for removal, denying that the defendant was
a nonresident corporation, and alleging that it was, for all the
purposes of this suit, a resident of West Virginia, and there-
fore not entitled to remove the case; and the court, upon a
hearing on that petition and answer, " taking judicial notice

of the statutes incorporating the defendant in Virginia and in this State, and being of opinion that said Baltimore and Ohio Railroad Company is not a nonresident corporation," refused to allow the removal.

But the Circuit Court of the United States, on June 11, 1888, upon the production by the defendant of a duly certified copy of the record of the above proceedings, ordered the case to be docketed in that court; and on July 23, 1888, ordered it to be removed into that court.

On December 13, 1888, the plaintiff filed in that court a plea (called in the record a plea in abatement) that it ought not to take further cognizance of the action, because before and at the time of the removal the defendant "was and is now a resident of the District of West Virginia, and is therefore not entitled to remove said action" to that court. A demurrer to that plea was filed by the defendant, and sustained by the court. "And thereupon," as the record stated, " the plaintiff moved to remand this action to the circuit court of Berkeley County, which motion the court overruled."

The defendant then pleaded not guilty. Upon the issue joined on this plea, the case was tried by a jury, the plaintiff and other witnesses testified in his favor, a verdict was rendered for the defendant under instructions of the court, and judgment was rendered upon the verdict.

The plaintiff duly excepted to those instructions, and sued out this writ of error, which was entered in this court on January 13, 1890, together with an assignment of errors, in which the only error assigned to the sustaining of the demurrer to the plaintiff's plea, or to the denial of his motion to remand, was as follows: "The Circuit Court erred in sustaining the demurrer of the said defendant in error to the plaintiff's plea in abatement, and in overruling the motion of the plaintiff in error to remand the said cause to the state court whence it had been removed to said Circuit Court of the United States, thus deciding, both in sustaining said demurrer and in overruling said motion, that the Baltimore and Ohio Railroad Company was a nonresident of West Virginia and entitled to remove."

The other errors assigned were in rulings and instructions at later stages of the case, which it will not be necessary to consider.

At the present term of this court, the plaintiff's death was suggested, and Gerling, his administrator, appointed by the county court of Berkeley County in West Virginia, came in to prosecute in his stead; and the defendant moved to dismiss the writ of error, because an action for personal injuries abated by the death of the plaintiff.

It was argued, in behalf of the administrator, that the removal from the state court gave the Circuit Court of the United States no jurisdiction of this case, for two reasons: 1st. That the Baltimore and Ohio Railroad Company was a resident corporation of the State of West Virginia; 2d. That the application to the state court for removal was not made in time.

The consideration of this argument naturally takes precedence; because, if the courts of the United States never lawfully acquired jurisdiction of the case, they have no rightful power to determine any question of the liability of the defendant, or of the right of the original plaintiff in his lifetime, or of his administrator since his death, to maintain this action, but all such questions can only be determined in the courts of the State in which the action was brought; and, therefore, if the Circuit Court of the United States had no jurisdiction of the case, its judgment should be reversed for want of jurisdiction, with directions to remand the case to the state court, without passing upon the right to maintain the action in a competent tribunal.

1. The act of March 3, 1887, c. 373, which was in force at the time of the removal of this case, authorized any civil action brought in a court of a State between citizens of different States, and in which the matter in dispute exceeded, exclusive of interest and costs, the sum or value of $2000, to be removed into the Circuit Court of the United States "by the defendant or defendants therein, being nonresidents of that State." 24 Stat. 552. In order to be a "nonresident of that State," within the meaning of this statute, the defendant must be a

citizen of another State, or a corporation created by the laws of another State. *McCormick Co.* v. *Walthers,* 134 U. S. 41; *Shaw* v. *Quincy Mining Co.,* 145 U. S. 444; *Southern Pacific Co.* v. *Denton,* 146 U. S. 202; *Martin* v. *Snyder,* 148 U. S. 663.

A railroad corporation, created by the laws of one State, may carry on business in another, either by virtue of being created a corporation by the laws of the latter State also, as in *Railroad Co.* v. *Vance,* 96 U. S. 450; *Memphis & Charleston Railroad* v. *Alabama,* 107 U. S. 581; *Clark* v. *Barnard,* 108 U. S. 436; *Stone* v. *Farmers' Co.,* 116 U. S. 307; and *Graham* v. *Boston, Hartford & Erie Railroad,* 118 U. S. 161; or by virtue of a license, permission or authority, granted by the laws of the latter State, to act in that State under its charter from the former State. *Railroad Co.* v. *Harris,* 12 Wall. 65; *Railroad Co.* v. *Koontz,* 104 U. S. 5; *Pennsylvania Railroad* v. *St. Louis &c. Railroad,* 118 U. S. 290; *Goodlett* v. *Louisville & Nashville Railroad,* 122 U. S. 391; *Marye* v. *Baltimore & Ohio Railroad,* 127 U. S. 117. In the first alternative, it cannot remove into the Circuit Court of the United States a suit brought against it in a court of the latter State by a citizen of that State, because it is a citizen of the same State with him. *Memphis & Charleston Railroad* v. *Alabama,* above cited. In the second alternative, it can remove such a suit, because it is a citizen of a different State from the plaintiff. *Railroad Co.* v. *Koontz,* above cited.

Whether the Baltimore and Ohio Railroad Company had the right to remove into the Circuit Court of the United States this action, brought against it by a citizen of West Virginia in a court of that State, therefore depends upon the question whether this company was a corporation created by the laws of Maryland only, or by the laws of West Virginia also.

This company, as is admitted, was originally incorporated by the statute of Maryland of February 28, 1827, (1826, c. 123,) entitled "An act to incorporate the Baltimore and Ohio Railroad Company," by which subscriptions to its capital stock were to be received by commissioners therein appointed,

rights to subscribe for certain amounts of stock were reserved to the State of Maryland and to the city of Baltimore, and, as soon as a certain amount had been subscribed for, it was to become a corporation by the name of the Baltimore and Ohio Railroad Company, capable of purchasing, holding and selling real and personal property, and of suing and being sued by that name, and to enjoy all the powers, rights and privileges of a corporation; its general meetings were to be held and directors chosen annually in Baltimore, and the president chosen by the directors; and the president and directors were authorized to increase the capital stock, to declare dividends, and to construct and maintain a railroad from the city of Baltimore to the Ohio River, and to purchase or take property for this purpose, making compensation to the owners.

In support of the proposition that this company had no right to remove the case into the Circuit Court of the United States, several legislative acts and judicial decisions of Virginia and West Virginia were relied on, which require examination.

In West Virginia, statutes of that State, or of the parent State of Virginia, creating railroad corporations, or licensing and authorizing them to exercise their franchises within the State, are deemed public acts, of which the courts of the State take judicial notice, without proof. *Hart* v. *Baltimore & Ohio Railroad*, 6 W. Va. 336, 349–358; *Mahaney* v. *Kephart*, 15 W. Va. 609, 624; *Henen* v. *Baltimore & Ohio Railroad*, 17 W. Va. 881, 899; *Northwestern Bank* v. *Machir*, 18 W. Va. 271. Doubtless, therefore, such statutes must be judicially noticed by the Circuit Court of the United States, sitting within the State of West Virginia and administering its laws, and by this court on writ of error to that court. *Covington Drawbridge* v. *Shepherd*, 20 How. 227, 232.

By the statute of Virginia of March 8, 1827, c. 74, entitled " An act to confirm a law, passed at the present session of the general assembly of Maryland, entitled 'An act to incorporate the Baltimore and Ohio Railroad Company,'" and reciting that act in full, it was enacted that "the same rights and privileges shall be and are hereby granted to the aforesaid

company within the territory of Virginia, as are granted to them within the territory of Maryland; the said company shall be subject to the same pains, penalties and obligations, as are imposed by said act; and the same rights, privileges and immunities which are reserved to the State of Maryland, or to the citizens thereof, are hereby reserved to the State of Virginia and her citizens;" excepting as to the location of the railroad in Virginia, and the property to be taken for its construction; and excepting also that any injury at any time done to the road within the limits of Virginia should be punished according to its laws in force for the protection of its public works.

By the statute of Virginia of March 6, 1847, c. 99, it was enacted that "the Baltimore and Ohio Railroad Company be and they are hereby authorized to complete their road through the territory of this Commonwealth" to Wheeling in Virginia, upon certain conditions, including the following:

By section 6, "said company shall be subject to the provisions of" the statute of Virginia of March 11; 1837, c. 118; "with respect to that portion of their road or other improve-. ments now or hereafter to be constructed within this Commonwealth, so far as the same are properly applicable."

By section 7, "the stock, property and profits of said company, so far as the same may be or accrue within this Commonwealth, shall be subject to general taxation in like manner and on the same footing with other similar companies within this State: Provided, however, that said taxing power shall not be exercised until and unless the net income of the said Baltimore and Ohio Railroad shall exceed six per centum per annum upon their capital invested."

By section 8, "the general assembly hereby reserves to itself the power of hereafter altering, amending or modifying any or any part of the provisions of this act: Provided, that the rights of property and franchises acquired under this act, and the free use and enjoyment of their rights and privileges, as granted by this or any other former act now in force, shall not be taken away or impaired by any such further act of legislation."

The statute of Virginia of March 11, 1837, c. 118, (referred to in section 6 of the statute of 1847, above cited,) was entitled "An act prescribing certain regulations for the incorporation of railroad companies;" and began by enacting that "whenever it shall be deemed necessary by the general assembly to grant a charter for the incorporation of a company to construct a railroad, the following general provisions shall be deemed and taken to be a part of the said charter or act of incorporation, to the same effect as if the same were expressly reënacted in reference to any such charter or act, except so far as such charter or act may otherwise expressly provide." Those general provisions related to the exercise of the right of eminent domain, and the payment of compensation for property taken or injured; the time of completing the works of a company so incorporated; the annulling of its charter by the State of Virginia in case it should afterwards fail to keep its road in repair, and to afford the intended accommodation to the public, for three successive years; the right and duty of transporting persons and property; and other matters not necessary to be specified.

Upon the division of the State of Virginia, and the admission of West Virginia into the Union as a State, that part of the Baltimore and Ohio Railroad, which had been within the State of Virginia, came within the State of West Virginia. See Act of Congress of December 31, 1862, c. 6; 12 Stat. 633; *Virginia* v. *West Virginia*, 11 Wall. 39. But the general statutes of West Virginia, cited for the plaintiff, do not appear to have any important bearing upon this part of the case.

The statutes of West Virginia of 1872, c. 227, § 16, and 1882, c. 97, § 30, by which all railroad corporations, "doing business in this State under charters granted and laws passed by the State of Virginia or this State," are declared to be domestic corporations, were evidently aimed at those companies which had been made corporations by either State, whether under special charters or general laws; and were probably intended to make sure that corporations, created by Virginia before the separation of West Virginia, and doing business within the territory of the latter, should be consid-

ered corporations of this State; and cannot reasonably be construed as including corporations created by some other State only.

Section 30 of chapter 54 of the code of West Virginia authorizes any corporation, duly incorporated by the laws of any other State, to hold property and transact business in West Virginia, "upon complying with the requirements of this section, and not otherwise." These requirements are that every such corporation shall file with the Secretary of State a copy of its charter, or of its articles of association and of the law under which it is incorporated, and shall receive from him a certificate of the fact, and file this certificate with the clerk of a county in which its business is conducted. By a further provision of this section, "every railroad corporation, doing business in this State under the provisions of this section, or under charters granted or laws passed by the State of Virginia, or this State, is hereby declared to be, as to its works, property, operations, transactions and business in this State, a domestic corporation, and shall be so held and treated in all suits and legal proceedings which may be commenced or carried on by or against any such railroad corporation, as well as in all other matters relating to such corporation." It then prohibits, under penalties, any "railroad corporation, which has a charter or any corporate authority from any other State," to do business or to bring any action in the State, until it has filed with the Secretary of State a writing under its corporate seal accepting the provisions of this section. This section does not make any corporation of another State, which has neither complied with its requirements, nor been previously made a corporation by special charter or general law of Virginia or of West Virginia, a domestic corporation of West Virginia. It has not been proved or suggested that the Baltimore and Ohio Railroad Company ever complied with the requirements of this section. Nor, as has been seen, had it been previously made a corporation by any statute of West Virginia.

The question under consideration, therefore, turns upon the construction and effect of the statutes of Virginia, above referred to.

The position that, by force of those statutes of Virginia, the Baltimore and Ohio Railroad Company became a corporation of Virginia, and consequently of West Virginia, is sought to be maintained by expressions of opinion to that effect by the Court of Appeals of Virginia in *Baltimore & Ohio Railroad* v. *Gallahue,* (1855,) 12 Grattan, 655, and by the Supreme Court of Appeals of West Virginia in *Goshorn* v. *Supervisors,* (1865,) 1 W. Va. 308, and in *Baltimore & Ohio Railroad* v. *Supervisors,* (1869,) 3 W. Va. 319. But in the first case the point decided was that the Baltimore and Ohio Railroad Company was liable to be sued in Virginia; the second case concerned the validity of a county subscription to stock of a railroad company incorporated in Pennsylvania, and authorized by a statute of Virginia to construct a railroad therein; and the third case involved only the right of the State of West Virginia to tax the Baltimore and Ohio Railroad Company.

On the other hand, this court, in *Railroad Co.* v. *Harris,* (1870,) 12 Wall. 65, upon great consideration, and with those cases before it, was clearly of opinion that neither the statutes of Virginia, nor a similar act of Congress as to the District of Columbia, made the Baltimore and Ohio Railroad Company a new corporation; and this for cogent and satisfactory reasons, which were stated by Mr. Justice Swayne in delivering judgment as follows: "In both the original Maryland act of incorporation is referred to, but neither expressly or by implication create a new corporation. The company was chartered to construct a road in Virginia, as well as in Maryland. The latter [a mistake for 'former,' as it evidently means in Virginia] could not be done without the consent of Virginia. That consent was given upon the terms which she thought proper to prescribe. With a few exceptions, not material to the question before us, they were the same as to powers, privileges, obligations, restrictions and liabilities as those contained in the original charter. The permission was broad and comprehensive in its scope, but it was a license and nothing more. It was given to the Maryland corporation as such, and that body was the same in all its elements and in its identity after-

wards as before. In its name, locality, capital stock, the elec-
tion and power of its officers, in the mode of declaring divi-
dends, and doing all its business, its unity was unchanged.
Only the sphere of its operations was enlarged." 12 Wall. 81.
This court then expressed its concurrence in the view taken in
*Baltimore & Ohio Railroad* v. *Gallahue*, 12 Grattan, 655, that
the company was suable in Virginia, and decided that it was
likewise suable in the District of Columbia, concluding its dis-
cussion of the subject by saying, "Looking at the statute
alone, and reading it by its own light, we entertain no doubt
that it made the company liable to suit, where this suit was
brought, in all respects as if it had been an independent corpo-
ration of the same locality." 12 Wall. 83, 84.

In *Baltimore & Ohio Railroad* v. *Pittsburg &c. Railroad*,
(1881,) 17 W. Va. 812, a petition of the Baltimore and Ohio
Railroad Company, for the removal into the Circuit Court of
the United States of a proceeding for the taking of some of
its land for the railroad of a West Virginia corporation, was
denied by the courts of West Virginia, upon the ground that
the Federal courts could under no circumstances have jurisdic-
tion of such cases. 17 W. Va. 866, 867. That decision is
inconsistent with the decisions of this court. *Boom Co.* v.
*Patterson*, 98 U. S. 403, 407; *Union Pacific Railway* v.
*Kansas City*, 115 U. S. 1, 19; *Searl* v. *School District*, 124
U. S. 197. But (which directly bears upon the question now
before us) the highest court of West Virginia, in that case,
after referring to the cases in 12 Grattan and in 1 and 3 West
Virginia, and quoting at length from the opinion of this court
in *Railroad Co.* v. *Harris*, including the passages above cited,
said: "If this be true, we need not differ as to whether the
act of Virginia was a charter to the Baltimore and Ohio Rail-
road Company, or a license of the character described; the
result would be the same in either case; the effect would be
to make it, *quoad* all its bearings [business?], contracts, etc., in
West Virginia, liable to suit here, the same as if it were a
corporation of West Virginia." 17 W. Va. 875. The decisions
in *Henen* v. *Baltimore & Ohio Railroad*, 17 W. Va. 881, and
*Quarrier* v. *Baltimore & Ohio Railroad*, 20 W. Va. 424,

simply follow that case; and we have been referred to no later decision of that court upon the subject.

. There does not appear, therefore, to be such a settled course of adjudication in the courts of West Virginia that the Baltimore and Ohio Railroad Company has been made by the statutes of Virginia a corporation of that State and of the State of West Virginia, as should induce this court, when the question arises under an act of Congress defining the jurisdiction of the courts of the United States, to surrender its own opinion, and to reverse the conclusion at which it deliberately arrived in *Railroad Co.* v. *Harris*, and which it has since repeatedly approved. *Railway Co.* v. *Whitton*, 13 Wall. 270, 285; *Ex parte Schollenberger*, 96 U. S. 369, 376; *Railroad Co.* v. *Vance*, 96 U. S. 450, 458; *Railroad Co.* v. *Koontz*, 104 U. S. 5, 9, 13; *Goodlett* v. *Louisville & Nashville Railroad*, 122 U. S. 391, 402, 403.

The Baltimore and Ohio Railroad Company, not being a corporation of West Virginia, but only a corporation of Maryland, licensed by West Virginia to act as such within its territory, and liable to be sued in its courts, had the right under the Constitution and laws of the United States, when so sued by a citizen of this State, to remove the suit into the Circuit Court of the United States; and could not have been deprived of that right by any provision in the statutes of the State. *Insurance Co.* v. *Morse*, 20 Wall. 445; *Barron* v. *Burnside*, 121 U. S. 186; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202, 207.

2. The other objection taken in argument to the validity of the removal of the case into the Circuit Court of the United States is that the petition for removal was not seasonably filed in the state court under the provision of the act of Congress of 1887, by which any party, entitled to remove such a suit from a state court into the Circuit Court of the United States, "may make and file a petition in such suit in such state court at the time, or any time before, the defendant is required by the laws of the State, or the rule of the state court in which such suit is brought, to answer or plead to the declaration or complaint of the plaintiff." 24 Stat. 554.

The original summons in this case was issued by the state court on March 3, 1888, returnable at the rules to be held on the first Monday of March, 1888, which was March 5, and was served, as appeared by the officer's return, at 11 A.M. of March 5, the statutes of the State providing that "any process may be executed on or before the return day thereof." W. Va. Code of 1884, c. 124, § 2.

On the record of that court were the following minutes: "March rules, 1888: Declaration filed and common order. April rules, 1888: Common order confirmed and W. E."

The meaning of these minutes is that the plaintiff, having filed his declaration at the rule day on which the summons was returnable, and the defendant having failed to appear on that day, there was thereupon entered in the clerk's office, as authorized by the statutes of the State, a conditional judgment, or judgment *nisi*, known as the "common order," that judgment be entered for the plaintiff unless the defendant should appear and plead at the next rules; and at April rules, the defendant continuing in default, the clerk entered, pursuant to those statutes, an office judgment, confirming the former one, with an order or writ of enquiry of damages. W. Va. Code, c. 125, §§ 1, 6; 4 Minor's Institutes, 599, 601.

By the statutes and practice of the State, this office judgment would, if not set aside, become a final judgment on, and not before, the last day of the next succeeding term. But the defendant might, at any time before the end of that term, "appear and plead to issue," that is to say, answer to the merits of the action, either by plea in bar, or by demurrer; and, if he did so appear and plead within that time, the office judgment, not having been entered up in court, nor the writ or order of enquiry executed, would be set aside as of course, and the case stand for trial upon the merits. In short, either judgment in the clerk's office was merely a formal judgment of default, not affecting the defendant's absolute right to interpose any defence upon the merits. But at a subsequent term, or if the office judgment had been confirmed by the court, or the writ of enquiry executed, he could not, without leave of court, file any plea whatever. A plea to the juris-

diction, or in abatement, if it could have been filed after the common order or conditional judgment in the clerk's office, certainly could not be filed, without special leave of the court, after the office judgment confirming that order; and therefore, in this case, upon the most liberal construction possible, not after the April rules. W. Va. Code, c. 125, §§ 16, 46, 47; 4 Minor's Institutes, 601, 605; *Resler* v. *Shehee*, 1 Cranch, 110; *Furniss* v. *Ellis*, 2 Brock. 14; *Hinton* v. *Ballard*, 3 W. Va. 582; *Delaplain* v. *Armstrong*, 21 W. Va. 211.

The defendant's petition for the removal of the case into the Circuit Court of the United States was not filed at the rules, either in March or in April. But it was afterwards filed in and heard by the state court before the end of the April term. It was therefore filed at or before the time at which the defendant was required by the laws of the State to answer or plead to the merits of the case, but after the time at which he was required to plead to the jurisdiction of the court, or in abatement of the writ.

Was this a compliance with the provision of the act of Congress of 1887 which defines the time of filing a petition for removal in the state court? We are of opinion that it was not, for more than one reason. This provision allows the petition for removal to be filed at or before the time when the defendant is required by the local law or rule of court "to answer or plead to the declaration or complaint." These words make no distinction between different kinds of answers or pleas; and all pleas or answers of the defendant, whether in matter of law by demurrer, or in matter of fact, either by dilatory plea to the jurisdiction of the court or in suspension or abatement of the particular suit, or by plea in bar of the whole right of action, are said, in the standard books on pleading, to "oppose or answer" the declaration or complaint which the defendant is summoned to meet. Stephen on Pleading, (1st Am. ed.,) 60, 62, 63, 70, 71, 239; Lawes on Pleading, 36. The Judiciary Act of September 24, 1789, c. 20, § 12, required a petition for removal of a case from a state court into the Circuit Court of the United States to be filed by the defendant "at the time of entering his appearance in

such state court." 1 Stat. 79. The recent acts of Congress have tended more and more to contract the jurisdiction of the courts of the United States, which had been enlarged by intermediate acts, and to restrict it more nearly within the limits of the earliest statute. *Pullman Car Co.* v. *Speck,* 113 U. S. 84; *Smith* v. *Lyon,* 133 U. S. 315, 320; *In re Pennsylvania Co.,* 137 U. S. 451, 454; *Fisk* v. *Henarie,* 142 U. S. 459, 467; *Shaw* v. *Quincy Mining Co.,* 145 U. S. 444, 449.

Construing the provision now in question, having regard to the natural meaning of its language, and to the history of the legislation upon this subject, the only reasonable inference is that Congress contemplated that the petition for removal should be filed in the state court as soon as the defendant was required to make any defence whatever in that court, so that, if the case should be removed, the validity of any and all of his defences should be tried and determined in the Circuit Court of the United States.

As the petition for the removal of this case into the Circuit Court of the United States was not filed in the state court within the time mentioned in the act of Congress, it would follow that, if a motion to remand upon that ground had been made promptly and denied, the judgment of the Circuit Court of the United States must have been reversed, with directions to remand the case to the state court. *Edrington* v. *Jefferson,* 111 U. S. 770; *Baltimore & Ohio Railroad* v. *Burns,* 124 U. S. 165.

3. But the record, as appears by the statement of the material parts thereof at the beginning of this opinion, not only does not show that any such objection to the removal was made, either in the state court or in the Circuit Court of the United States, but clearly implies that it was not, and that the only objection made in either court to the jurisdiction of the Circuit Court of the United States was that the defendant, as well as the plaintiff, was a citizen of West Virginia; and the assignment of error in this respect is expressly so limited.

The question therefore arises whether the objection to the time of filing the petition for removal can be raised for the

first time in this court, or must be held to have been waived by not taking it below.

The time of filing a petition for the removal of a case from a state court into the Circuit Court of the United States for trial is not a fact in its nature essential to the jurisdiction of the national court under the Constitution of the United States, like the fundamental condition of a controversy between citizens of different States. But the direction as to the time of filing the petition is more analogous to the direction that a civil suit within the original jurisdiction of the Circuit Court of the United States shall be brought in a certain district, a non-compliance with which is waived by a defendant who does not seasonably object that the suit is brought in the wrong district. *Gracie* v. *Palmer*, 8 Wheat. 699; *Taylor* v. *Longworth*, 14 Pet. 172, 174; *St. Louis & San Francisco Railway* v. *McBride*, 141 U. S. 127; *Texas & Pacific Railway* v. *Cox*, 145 U. S. 593; *Central Trust Co.* v. *McGeorge*, 151 U. S. 129.

That the jurisdiction of the Circuit Court of the United States over a case removed into it from a state court cannot be defeated upon the ground that the petition for removal was filed too late, if the objection is not taken until after the case has proceeded to trial in the Circuit Court of the United States, has been distinctly decided by this court.

In *French* v. *Hay*, 22 Wall. 238, the case had been removed under the act of March 2, 1867, c. 196, (14 Stat. 558,) reënacted in Rev. Stat. § 639, cl. 3, which required the petition to be filed " before the final hearing or trial" in the state court; the Circuit Court of the United States denied a motion to remand, made, as the report states, because the act "had not been complied with in respect to time and several other important particulars;" and this court, on appeal, approved its action, and, speaking by Mr. Justice Swayne, said : " The objection made in the court below touching the removal of the case from the state court, and which objection has been renewed here, was not made in the court below until the testimony was all taken, the case was ready for hearing, and nearly three years had elapsed since the transfer was made. The objection came too late. Under the circumstances it must be held to

have been conclusively waived." And *Taylor* v. *Longworth*, above cited, was referred to as in point. 22 Wall. 244, 245.

The reasons in support of this conclusion were stated at length in *Ayers* v. *Watson*, 113 U. S. 594, which was brought up by writ of error from the Circuit Court of the United States, into which the case had been removed under the act of March 3, 1875, c. 137, since amended by the act of 1887 in no material respect bearing upon the present inquiry, except in fixing an earlier time for filing the petition for removal in the state court, by requiring it to be filed at or before the time when the defendant is required to answer or plead, instead of (as it was in the act of 1875) " before or at the term at which such cause could be first tried and before the trial thereof." The two acts are printed side by side in 120 U. S. 786–794.

In *Ayers* v. *Watson*, Mr. Justice Bradley, speaking for the whole court, after observing that " the application for removal was beyond question too late according to the act of 1875," which governed the case, and that the court was therefore compelled to examine the effect of the act of 1875 when the application was made at a later period of time than was allowed by that act, and stating the substance of section 2 of that act, defining the classes of cases which might be removed into the Circuit Court of the United States, said : " This is the fundamental section, based on the constitutional grant of judicial power. The succeeding sections relate to the forms of proceeding to effect the desired removal." " The second section defines the cases in which a removal may be made ; the third prescribes the mode of obtaining it, and the time within which it should be applied for. In the nature of things, the second section is jurisdictional, and the third is but modal and formal. The conditions of the second section are indispensable, and must be shown by the record ; the directions of the third, though obligatory, may to a certain extent be waived. Diverse state citizenship of the parties, or some other jurisdictional fact prescribed by the second section, is absolutely essential, and cannot be waived, and the want of it will be error at any stage of the cause, even though assigned by the party at whose instance it was committed. *Mansfield*

& *Coldwater Railway Co.* v. *Swan,* 111. U. S. 379. Application in due time, and the proffer of a proper bond, as required in the third section, are also essential if insisted on, but, according to the ordinary principles which govern such cases, may be waived, either expressly or by implication. We see no reason, for example, why the other party may not waive the required bond, or any informalities in it, or informalities in the petition, provided it states the jurisdictional facts; and if these are not properly stated, there is no good reason why an amendment should not be allowed, so that they may be properly stated. So, as it seems to us, there is no good reason why the other party may not also waive the objection as to the time within which the application for removal is made. It does not belong to the essence of the thing; it is not, in its nature, a jurisdictional matter, but a mere rule of limitation. In some of the older cases the word jurisdiction is often used somewhat loosely, and no doubt cases may be found in which this matter of time is spoken of as affecting the jurisdiction of the court. We do not so regard it. And since the removal was effected at the instance of the party who now makes the objection, we think that he is estopped." 113 U. S. 597–599.

In that case, it is true, it was the party who had removed the case into the Circuit Court of the United States, who afterwards objected to the jurisdiction of that court because the removal was not in time, and was held to be estopped to do so. But if due time of removal had been made by the act of Congress a jurisdictional fact, neither party could waive, or be estopped to set up, the want of it; but, as observed by Mr. Justice Bradley in the passage above quoted, and directly adjudged in *Mansfield & Coldwater Railway Co.* v. *Swan,* cited by him, the fact would be absolutely essential, and the want of it would be error at any stage of the cause, even though assigned by the party at whose instance it was committed. His whole course of reasoning leads up to the conclusion that the time of removal, not being a jurisdictional and essential fact, is a subject of waiver and of estoppel alike.

The incidental suggestion, in that opinion, that the petition for removal might be amended in the Circuit Court as to the

form of stating the jurisdictional facts, assumes that those facts are already substantially stated therein; and accords with later decisions, by which such amendments may be allowed when, and only when, the petition, as presented to the state court, shows upon its face sufficient ground for removal. *Carson* v. *Dunham*, 121 U. S. 421, 427; *Orehore* v. *Ohio & Mississippi Railroad*, 131 U. S. 240; *Jackson* v. *Allen*, 132 U. S. 27.

The decision in *Ayers* v. *Watson*, as to the waiver in the Circuit Court of the United States of the objection that the petition for removal had not been seasonably filed in the state court, has never been doubted or qualified. In *Kansas City Railroad* v. *Daughtry*, 138 U. S. 298, cited by the plaintiff in the present case, the writ of error was not to the Circuit Court of the United States, after the case had been removed into that court and tried and determined there; but it was to the state court, which had refused to allow the removal, and the decision of this court was that there was no error in that refusal if the petition for removal had not been filed in time to make it the duty of that court to surrender its jurisdiction.

The result is, that an objection to the exercise by the Circuit Court of the United States of jurisdiction over a case, otherwise removable, upon the ground that the petition for removal was filed too late, is an objection which may be waived, and that it has been waived in the case at bar.

4. There being no error, of which advantage can be taken at this stage of the case, affecting the jurisdiction of the Circuit Court of the United States, the next matter to be considered is the defendant's motion to dismiss the writ of error, as having abated by the death of the original plaintiff, because it was an action to recover damages for a personal injury.

By the Judiciary Act of September 24, 1789, c. 20, § 31, (1 Stat. 90,) following the statute of 8 & 9 Will. 3, c. 11, §§ 6, 7, and since embodied as follows in the Revised Statutes, "when either of the parties, whether plaintiff or petitioner, or defendant, in any suit in any court of the United States, dies before final judgment; the executor or administrator of such deceased party may, in case the cause of action survives by

law, prosecute or defend any such suit to final judgment," and upon *scire facias* judgment may be rendered for or against him; and "if there are two or more plaintiffs or defendants, in a suit where the cause of action survives to the surviving plaintiff, or against the surviving defendant, and one or more of them dies, the writ or action shall not be thereby abated, but, such death being suggested upon the record, the action shall proceed at the suit of the surviving plaintiff against the surviving defendant." Rev. Stat. §§ 955, 956.

These statutes authorize the executor or administrator to prosecute or defend in those cases only in which the cause of action survives by law, and do not undertake to define what those cases are.

The question whether a particular cause of action is of a kind that survives for or against the personal representative of a deceased person is a question not of procedure, but of right. As was said by Chief Justice Waite, speaking for this court: "The personal representatives of a deceased party to a suit cannot prosecute or defend the suit after his death, unless the cause of action, on account of which the suit was brought, is one that survives by law. Rev. Stat. § 955." "The right to proceed against the representatives of a deceased person depends not on forms and modes of proceeding in a suit, but on the nature of the cause of action for which the suit is brought. If the cause of action survives, the practice, pleadings, and forms and modes of proceeding in the courts of the State may be resorted to in the courts of the United States for the purpose of keeping the suit alive and bringing in the proper parties. Rev. Stat. § 914. But if the cause of action dies with the person, the suit abates and cannot be revived. Whether an action survives depends on the substance of the cause of the action, not on the forms of proceeding to enforce it." *Schreiber* v. *Sharpless*, 110 U. S. 76, 80. In that case, the right in question being of an action for a penalty under a statute of the United States, the question whether it survived was governed by the laws of the United States. But in the case at bar, the question whether the administrator has a right of action depends upon the law of West Virginia, where the

action was brought and the administrator appointed. Rev. Stat. § 721; *Henshaw* v. *Miller*, 17 How. 212. The mode of bringing in the representative, if the cause of action survived, would also be governed by the law of the State, except so far as Congress has regulated the subject.

The provisions of the Code of West Virginia, which have been supposed in argument to have any bearing upon this subject, are copied in the margin.[1]

---

[1] CHAPTER LXXXV.

OF PERSONAL REPRESENTATIVES; THEIR POWERS AND DUTIES AS TO PERSONAL ASSETS.

SEC. 19. A personal representative may sue or be sued upon any judgment for or against, or any contract of or with, his decedent.

SEC. 20. An action of trespass, or trespass on the case, may be maintained by or against a personal representative for the taking or carrying away of any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent.

CHAPTER CIII.

OF ACTIONS FOR INJURIES.

SEC. 5. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as to amount in law to murder in the first or second degree, or manslaughter.

SEC. 6. Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportions provided by law in relation to the distribution of personal estates left by persons dying intestate. In every such action, the jury may give such damages as they shall deem fair and just, not exceeding ten thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased: Provided, that every such action shall be commenced within two years after the death of such deceased person.

CHAPTER CIV.

LIMITATION OF SUITS.

SEC. 12. Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring

· Chapter 85, entitled " Of personal representatives; their powers and duties as to personal assets," authorizes actions,

the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued, and not after.

[The only limitations of personal actions, otherwise prescribed in the code, are of actions for injuries causing death, in c. 103, § 6, above quoted; of actions on recognizances, in c. 104, § 11; on judgments, in c. 104, § 13, and c. 139, §§ 10, 11; on other contracts and awards, in c. 104, §§ 6, 7; and of proceedings to avoid voluntary gifts, in c. 104, § 14.]

## CHAPTER CXXVII.

### OF THE DEATH OR CHANGE OF PARTIES, AND THE DISCONTINUANCE OF CAUSES NOT PROSECUTED.

SEC. 1. Where a party dies, or becomes convict of felony, or insane, or the powers of a party who is a personal representative or committee cease, if such fact occur after verdict, judgment may be entered as if it had not occurred.

SEC. 2. Where such fact occurs in any stage of a cause, whether it be in a court of original or appellate jurisdiction, if it occur as to any of several plaintiffs or defendants, the suit may proceed for or against the others, if the cause of suit survive to or against them. If a plaintiff or defendant die pending any action, whether the cause of action would survive at common law or not, the same may be revived and prosecuted to judgment and execution in the same manner as if it were for a cause of action arising out of contract.

· SEC. 3. If, in any case of appeal, writ of error or *supersedeas*, which is now or may hereafter be pending, there be at any time in an appellate court suggested or relied on, in abatement, the death of the party, or any other fact which, if it had occurred after the verdict in an action, would not have prevented judgment being entered as if it had not occurred, the appellate court may, in its discretion, enter judgment or decree in such case as if the said fact had not occurred.

SEC. 4. In any stage of any case, a *scire facias* may be sued out for or against the committee of any party who is insane or a convict; or for or against a party before insane, the powers of whose committee have ceased; or for or against the personal representative of the decedent who, or whose personal representative, was a party; or for or against the heirs or devisees of a decedent who was a party; or for the assignee or beneficiary party; to show cause why the suit should not proceed in the name of him or them. Or where the party dying, or whose powers cease, or such insane person or convict, is plaintiff or appellant, the person or persons for whom such *scire facias* might be sued out may, without notice or *scire facias*, move that the

which might have been brought by or against a person in his lifetime, to be brought after his death by or against his personal representative, in no other cases but those of judgments or contracts, or of taking or injuring personal property.

These provisions are copied from the Code of Virginia of 1849, c. 130, §§ 19, 20, and approximately, though not exactly, adopt the rule of the common law that a personal action dies with the person, as modified by the English statutes of 4 Edw. 3, c. 7, and 3 & 4 Will. 4, c. 42, § 2. Williams on Executors, pt. 2, bk. 3, c. 1, sec. 1. In Virginia and West Virginia, except as specified in their own statutes, no action of tort can be maintained by or against the executor or administrator of the person to or by whom the wrong was done. *Henshaw* v. *Miller*, 17 How. 212; *Harris* v. *Crenshaw*, 3 Rand. 14; *Curry* v. *Mannington*, 23 W. Va. 14, 18.

The only case of a personal injury, for which an action might have been brought by a person in his lifetime, in which the Code of West Virginia authorizes an action to be brought by his personal representative, is that of a wrongful act, neglect, or default causing death, in which case chapter 103, entitled " Of actions for injuries," provides in sections 5 and 6, following the English statute of 9 & 10 Vict. c. 93, §§ 1; 2, (commonly known as Lord Campbell's Act,) that the person or corporation, who would have been liable if death had not ensued, shall be liable to an action by the personal representa-

---

suit proceed in his or their name. In the former case, after service of the *scire facias*, or in the latter case, on such motion if no sufficient cause be shown against it, an order shall be entered that the suit proceed according to such *scire facias* or motion. Any such new party, except in an appellate court, may have a continuance of the case at the term at which such order is entered; and the court may allow him to plead anew, or amend the pleadings, as far as it deems reasonable; but in other respects the case shall proceed to final judgment or decree for or against him, in like manner as if the case had been pending for or against him before such *scire facias* or motion.

SEC. 5. The clerk of the court in which the case is may issue such *scire facias* at any time, and an order may be entered at rules for the case to proceed in the name of the proper party, although the case be on the court docket.

[The subsequent sections as to discontinuance are not material.]

tive of the deceased person. The right of action thus given, although for the same act or neglect for which the person injured would have had a right of action in his lifetime, differs from an action brought by him, both in the ground on which it proceeds, and in the award of damages. It is not a common law action to recover damages for the injuries suffered by him while he lived, but it is an action given by statute for causing his death. The damages recovered cannot exceed $10,000; and are no part of the estate of the deceased, and cannot pass by his will, or be reached by his creditors; but, by the express terms of the statute, are to be distributed to his next of kin as if he died intestate, and are not subject to his debts. These sections, therefore, authorizing the personal representative to bring such an action after the death of the person injured, have no tendency to show an intention of the legislature that the representative may prosecute a common law action brought by that person in his lifetime.

The statute action must be brought within two years after the death. All other actions for personal injuries come within the general provision of the statute of limitations, chapter 104, § 12, of the Code of West Virginia, (corresponding to chapter 149, § 11, of the Code of Virginia,) by which the period of limitation of every personal action, for which no other limitation is prescribed, is fixed at five years, or at one year, depending upon the question whether "it be for a matter of such a nature that, in case a party dies, it can be brought by or against his personal representative."

It is hardly contended that by the law of West Virginia this action could have been begun by an executor or administrator. But it is argued that, having been begun by the person injured, it may be prosecuted by his administrator since his death, under the provisions of chapter 127 of the Code of West Virginia, and especially by virtue of the last clause of § 2 of this chapter.

The chapter is entitled "Of the death or change of parties, and the discontinuance of causes not prosecuted," and all its provisions relate rather to matters of procedure than of substantial right.

By the rule of the common law, *actio personalis moritur cum persona*, the death of the sole plaintiff or of the sole defendant before final judgment abated any personal action, except that, if the death occurred in vacation after verdict, judgment might be entered as of the preceding term. *Hatch* v. *Eustis*, 1 Gallison, 160, 162; *Green* v. *Watkins*, 6 Wheat. 260, 262. The rule has been modified in England and in this country by various statutes, with the object of avoiding the necessity of bringing a new action when the cause of action survives to the personal representative, but not always limited to that object.

Chapter 127 of the Code of West Virginia reënacts, with some modifications, chapter 173 of the Code of Virginia. After reënacting the provision of § 1 that when a party dies after verdict judgment may be entered as if the death had not occurred, and the provision of § 2 that in case of the death of any of several plaintiffs or defendants "the suit may proceed for or against the others, if the cause of action survive to or against them," it adds to this section this clause: "If a plaintiff or defendant die pending any action, whether the cause of action would survive at common law or not, the same may be revived and prosecuted to judgment and execution in the same manner as if it were for a cause of action arising out of contract."

It is argued that, by virtue of this clause, all actions of tort, including libel and slander and all actions for injury to the person, may, in case of the death of either party, be prosecuted by or against his personal representative.

However plausible that argument might be if this clause stood alone, and were to be construed by itself, and according to the literal meaning of the words, the clause assumes a different aspect upon considering the connection in which it stands, and the provisions of previous chapters, already mentioned, relating to the survivorship of causes of action.

It would be hardly consistent with the legislative intent, apparent from the objects and the limits of those provisions, to give the clause relied on the effect of allowing all actions of tort whatever to be prosecuted after the death of the original plaintiff by his personal representative; and to give it that

effect would permit the prosecution, after the death of a sole plaintiff or defendant, of an action which, by the first clause of the same section, if there had been several plaintiffs or defendants and one only had died, could not have proceeded for or against the others.

Moreover, by the final clause of § 4 of the same chapter, after the personal representative of either party dying has been brought in by *scire facias* or motion, "the case shall proceed to final judgment or decree for or against him, in like manner as if the case had been pending for or against him before such *scire facias* or motion." But if an action for a personal injury had been pending for or against the personal representative after the death of the person who suffered or committed the injury, the final judgment would have been that the action was abated by the death.

The reasonable inference is that the clause relied on, like the rest of the chapter, is intended only to prescribe the mode of procedure in actions the cause of which survives, either at common law, or by virtue of other chapters of the Code; and that its whole effect is to avoid the necessity of bringing a new action when the right of action so survives ; and not to give a new right of action, which did not exist before.

This is the view that has been taken by the highest court of the State whenever the matter has been brought before it.

In *Cunningham* v. *Sayre*, 21 W. Va. 440, that court, after observing that, at common law, "actions grounded in *tort* generally died with the person, and actions founded on contract generally survived," went on to say : "When the legislature, in the statute above referred to, used the language, that 'if a plaintiff or defendant die pending any action, whether the cause of action would survive at common law or not, the same may be revived and prosecuted to judgment and execution *in the same manner as if it were a cause of action arising out of contract*,' it is evident that it referred in the last clause of the section to the general common law rule that '*actions founded on contracts survived.*' It was found that great inconvenience arose in following the technical rule of the common law in abating actions, when the personal representative, his heir or

devisee, might bring another suit to accomplish substantially the same object had in view by the ancestor in bringing the original suit, and the manifest object of the statute was to enlarge the remedy so that the suit might be revived. It was not the object of the statute to create any new right, and give an action to the heir, devisee, or representative, which he had not at common law; but where the representative, heir, etc., had a right, by suit, to accomplish the same object, substantially, as the ancestor had in view in bringing the suit, that for convenience it should not abate on the ancestor's death, but might be revived." And it was upon that construction of the statute, that the court grounded its decision that an action of unlawful entry and detainer survived, upon the death of the plaintiff, to his heir, saying: "The suit which the ancestor brought was sufficient to acquire the possession, and the statute intended, in case of his death, that his heirs or devisees, who took his place with reference to that right, may revive the suit and prosecute it." 21 W. Va. 444, 445.

In *Curry* v. *Mannington*, 23 W. Va. 14, the question whether a right of action of tort for a personal injury, not causing death, would survive to the personal representative of the person injured, was directly presented for adjudication by a plea of the statute of limitations to an action against a town for a personal injury caused by a defect in a highway, and was decided in the negative, the court saying that, "under the common law, the rule was that all personal actions died with the person, according to the maxim, *actio personalis moritur cum persona;*" that by successive statutes in England and in this country, and by chapter 85, § 20, of the Code, the personal representative might sue for an injury to the personal estate of the decedent in his lifetime; that, "in the cases, however, of injuries to the *person*, and not to the *property* or *estate* of the decedent, whether by assault, battery, false imprisonment, slander, *negligence* or otherwise, if either the party who received or he who committed the injury die, the maxim applies rigidly, and no action can be supported either by or against his representative;" and that the only exception to this rule, known to the court, was in chapter 103,

§§ 5, 6, of the Code, "embracing what is known as Lord Camp-
bell's Act, giving a right of action to the representative against
any party wrongfully causing the death of his decedent." 23
W. Va. 18.

In *Gainer* v. *Gainer*, 30 W. Va. 390, 398, whether a suit
could be revived by the personal representative under chapter
127, was treated as depending upon the question whether, by
other laws of the State, the cause of action survived.

A like view was taken by the Court of Appeals of Maryland
of similar statutes of that State, published in 2 Kilty's Laws
of Maryland. By the act of 1785, c. 80, § 1, it was enacted
"that no action, brought or to be brought, in any court of
law in this State, shall abate by the death of either of the
parties to such action; but upon the death of any defendant,
in a case where the action by such death would have abated
before this act, the action shall be continued," and, in a real
action, "the heir or devisee of the deceased, or tenant in pos-
session, or other proper person to defend in such action," and,
in an action "to recover personal chattels, debt or damages,"
the executor or administrator or other proper person to defend,
might appear or be summoned in; "and in case the plaintiff
or plaintiffs, in any action aforesaid, shall die before the same
may be tried and judgment given, and such death would abate
the action before this act, the appearance of the heir, devisee,
executor or administrator, as the case may require, or other
proper person to prosecute such suits, shall be admitted to be
entered to the same." And the act of 1798, chapter 101, sub-
chapter 14, § 4, provided that "no personal action shall abate
by the death of either party, but executors and administrators
shall notice and conform to the directions of the act of 1785,
chapter 80, respecting their prosecution or defence of such
action." Notwithstanding the broad terms of those statutes,
the Court of Appeals held that an action against a railroad
company for a personal injury was abated by the death of
the plaintiff, saying: "Suits for injuries to the person or char-
acter die with the person, and cannot be maintained by the
representatives of the deceased party. Before the acts of 1785,
chapter 80, and 1798, chapter 101, sub-chapter 14, § 4, all per-

sonal actions abated by the death of a party, and it was neces-
sary for his representatives to commence the action anew;
and the object of those acts was to prevent this inconvenience
and delay, and to enable the representatives of deceased parties
to prosecute such actions as· had been instituted by their de-
cedents, during their lives, and which did not die with the
person.   Those acts never were intended, however, to prevent
the abatement of actions which died with the person." *Balti-
more & Ohio Railroad* v. *Ritchie*, 31 Maryland, 191, 198, 199.

In an action for a ·personal injury, a similar decision was
made in England under the Common Law Procedure Act of
1852, Stat. 15 & 16 Vict. c. 76, which provided, in § 135, that
"the death of a plaintiff or defendant shall not cause the
action to abate, but it may be continued as hereinafter men-
tioned;" in § 136, that when one of two or more plaintiffs or
defendants should die, the action should proceed, if the cause
of action survived to or against the others; in § 137, that "in
case of the death of a sole plaintiff or sole surviving plaintiff,
the legal representative of such plaintiff may, by leave of the
court or a judge, enter a suggestion of the death, and that he
is such legal representative, and the action shall thereupon
proceed," "and such judgment shall follow upon the verdict
in favor of or against the person making such suggestion, as
if ·such person were originally the plaintiff;" and in § 138,
that "in case of the death of a sole defendant or sole surviv-
ing defendant, where the action survives," the plaintiff might
suggest the death and proceed with the action.   It was argued
for the plaintiff that § 135, which was not restricted to actions
the cause. of which survived, was quite large enough in its
terms to include the case.   But the court held that the section
was not intended to give any new right of action, but only to·
prevent the proceedings abating by the death of the plaintiff,
and to permit the personal representative to continue them,
when he could have brought an action.; Mr. Justice Crompton
saying, "It would be a strange thing to hold that these sec-
tions, which relate merely to matters of procedure, had the
effect of doing away with the ancient common law rule —
*actio personalis moritur cum persona*." *Flinn* v. *Perkins*, 32

Law Journal (N. S.) Q. B. 10, 11; *S. C.* 8 Jurist, (N. S.) 1177.

That case does not appear to have ever been overruled or questioned, although it was cited by counsel in *Kramer* v. *Waymark*, L. R. 1 Ex. 241; *S. C.* 4 H. & N. 427; and again in *Hemming* v. *Batchelor*, L. R. 10 Ex. 54; *S. C.* 44 Law Journal (N. S.) Exch. 54.

In *Kramer* v. *Waymark*, the point decided was that § 139 of the Common Law Procedure Act, reënacting the general provision of the statute of 17 Car. 2, c. 8, § 1, that the death of either party between verdict and judgment should not be alleged for error, if judgment should be entered within two terms after the verdict, included an action for a personal injury. Such an entry of judgment upon a verdict which has established the rights of the parties is equivalent, in substance and effect, to the ordinary entry of judgment *nunc pro tunc* upon such a verdict; and is quite a different thing from permitting a litigation to be prosecuted by or against an executor or administrator.

In *Hemming* v. *Batchelor*, on the other hand, where the plaintiff, in an action for a personal injury, had been nonsuited, with leave to move for a new trial at the next term, and died before that term, the court held that the action abated by the death, and, while declining to enter judgment for the defendant on the nonsuit, held that it had no authority to grant a new trial.

In *Green* v. *Watkins*, 6 Wheat. 260, 262, it was said by Mr. Justice Story, following Tidd's Practice, 1096, that a writ of error in a personal action would not abate if the plaintiff in error died after assignment of errors. But the case before the court was a real action, in which, as he observed, the right descended to the heir. And there is nothing in Tidd's Practice, or in the authorities there cited, which countenances the theory that a writ of error in an action, the cause of which would not survive, either to heirs or to personal representatives, would not be abated by the death of the only person who could maintain the action. Section 956 of the Revised Statutes, like the statute of 8 & 9 Will. 3, c. 11, § 7, by which

the death of one of several plaintiffs or defendants does not abate an action which survives to or against the survivor of them, has been held to extend to writs of error, because, as said by Lord Ellenborough, and repeated by Chief Justice Waite: " The proceeding is an action which is commenced by a writ, and the cause of the action is the damage sustained by the parties from the error in the previous judgment, and this damage equally attaches on the survivor in this as in any other action." *Clarke* v. *Rippon*, 1 B. & Ald. 586 ; *Moses* v. *Wooster*, 115 U. S. 285 ; *McKinney* v. *Carroll*, 12 Pet. 66. Equally applicable to writs of error is section 955 of the Revised Statutes, (following section 6 of the statute of Will. 3,) by which, as observed by Chief Justice Waite in *Schreiber* v. *Sharpless*, before cited, "the personal representatives of a deceased party to a suit cannot prosecute or defend the suit after his death, unless the cause of action on account of which the suit is brought survives by law." 110 U. S. 76, 80.

The result is, that by the law of Virginia the administrator has no right to maintain this action, and that by the statutes of the United States regulating the proceedings in this court he is not authorized to come in to prosecute this writ of error. The only verdict and judgment below were in favor of the defendant, who is not moving to have that judgment affirmed or set aside. The original plaintiff never recovered a verdict, judgment upon which might be entered or affirmed *nunc pro tunc* in his favor. If the judgment below against him should now, upon the application of his administrator, be reversed and the verdict set aside for error in the instructions to the jury, or, according to the old phrase, a *venire de novo* be awarded, no new trial could be had, because the action has abated by his death. *Hemming* v. *Batchelor*, above cited ; *Bowker* v. *Evans*, 15 Q. B. D. 565 ; *Spalding* v. *Congdon*, 18 Wend. 543 ; *Corbett* v. *Twenty-third Street Railway*, 114 N. Y. 579 ; *Harris* v. *Crenshaw*, 3 Rand. 14, 24 ; *Cummings* v. *Bird*, 115 Mass. 346.

The necessary conclusion is that, the action having abated by the plaintiff's death, the entry must be

*Writ of error dismissed.*

Mr. Justice Harlan dissenting.

I cannot agree that this action abates or that the writ of error should be dismissed because of the death of the original plaintiff.

In the discussion at the bar of the question whether the action had abated by the death of the plaintiff, reference was made to chapter 103 of the Code of West Virginia, giving to the personal representative of one whose death has been caused by the wrongful act, neglect, or default of any person or corporation, a right of action for damages against such person or corporation. The right to bring such action is limited to two years, and the damages recovered cannot be subjected to the payment of the debts and liabilities of the decedent, but must be distributed to the parties and in the proportion provided by law in relation to the personal estate of those who die intestate. In my judgment, those provisions are of no consequence in the present inquiry. This suit was brought by the person alleged to have been injured to recover compensation for such injuries as he sustained. It is not claimed that his death, since this writ of error was sued out, was caused by those injuries. And the question is whether this personal action was abated by his death. Its determination, it is agreed, depends upon the law of West Virginia.

By the Code of West Virginia, c. 127, it is provided:

"Sec. 1. Where a party dies, or becomes convict of felony, or insane, or the powers of a party who is a personal representative or committee cease, if such fact occur after verdict, judgment may be entered as if it had not occurred.

"Sec. 2. Where such fact occurs in any stage of a cause, whether it be in a court of original or appellate jurisdiction, if it occur as to any of several plaintiffs or defendants, the suit may proceed for or against the others, if the cause of suit survive to or against them. If a plaintiff or defendant die pending any action, whether the cause of action would survive at common law or not, the same may be revived and prosecuted to judgment and execution in the same manner as if it were for a cause of action arising out of contract.

"Sec. 3. If, in any case of appeal, writ of error or *supersedeas* which is now or may hereafter be pending, there be at any time in an appellate court suggested or relied on, in abatement, the death of the party, or any other fact which, if it had occurred after the verdict in an action, would not have prevented judgment being entered as if it had not occurred, the appellate court may, in its discretion, enter judgment or decree in such case as if the said fact had not occurred."

Under the first section above quoted judgment could be entered without reviving the action if the party died after verdict. That section is substantially like section 1 of the statute of 17 Car. 2, c. 8, § 1. The object of the first clause of the second section of chapter 127 of the Code of West Virginia was to dispense with the necessity of reviving an action in which there were several plaintiffs or defendants, one of whom had died pending the action, provided the cause of suit was one which, according to the settled principles of the common law, survived to or against the other parties. This clause had the same object as the sixth and seventh sections of the statutes of 8 and 9 Will. 3, c. 2. These English statutes were examined in *Kramer* v. *Waymark*, L. R. 1 Ex. 241, 243, in which an infant plaintiff sued by next friend to recover damages for injuries sustained through the negligence of the defendant. The child died after verdict and before judgment was signed. Upon a rule to show cause why the judgment should not be set aside, on the ground of the death of the plaintiff before judgment, the court discharged the rule, saying that the proceedings could not be stayed in face of *Palmer* v. *Cohen*, 2 B. & Ad. 966. In the latter case, which was an action for libel, the plaintiff died after verdict and before judgment was entered by his executor at the next term. The court refused to set aside the judgment, holding that the death of the plaintiff, after verdict, did not prevent his executor from entering judgment. In the same case, the court referred to the Common Law Procedure Act, 1852, § 139, which provided that "in all actions, personal, real, or mixed, the death of either party between the verdict and the judgment shall not hereafter be alleged for error, so as such

judgment be entered within two terms after such verdict," (15 & 16 Vict. c. 76, § 139,) and said that it was stronger than the statute of Car. 2, and applied " to all actions, whether they would have survived to an executor or not." See *Gaines* v. *Conn's Heirs*, 2 Dana, 232.

The principal difference between the West Virginia statute, before it was amended in 1868, and the statutes of 17 Car. 2 and 8 and 9 Will. 3, §§ 6, 7, was that the latter did not apply to real actions, whereas the former embraced all actions — real, mixed, and personal. The first clause of section 2 of chapter 127 of the West Virginia Code is important in the present discussion, because the words " if the cause of suit survive to or against " any one of several plaintiffs or defendants, show that even when that section was adopted the legislature had in mind the distinction at common law between actions that survived and those that did not survive. And in 1868, with this distinction still in view, the legislature added the second clause of the second section, providing that " if a plaintiff or defendant die pending any action, *whether the cause of action would survive at common law or not*, the same may be revived and prosecuted to judgment and execution in the same manner as if it were for a cause of action arising out of contract."

If the second clause of section 2 of chapter 127 had never been adopted, an action in tort would not have abated in West Virginia by reason of the death of the plaintiff after verdict, but judgment could have been entered upon the verdict. This, according to *Kramer* v. *Waymark*, above cited, was the construction placed on the English statute, upon which the first section and the first clause of the second section of chapter 127 of the Code of West Virginia were evidently based. But the second clause of the second section of that chapter was a step in advance. It seems to me clear that the legislature intended, by that clause and under the circumstances stated in it, to permit any action, whatever its nature, and at every stage of it, to be revived and prosecuted to judgment and execution without reference to the question whether the cause of action would or would not survive at common law. The

purpose was to remove from the jurisprudence of West Virginia the distinction existing at .common law between causes of action that survived and those that did not survive. Martin sued to recover compensation for the injury alleged to have been done to him through the negligence of the railroad company. This cause of action would not have survived at common law where death occurred before verdict. But that fact became immaterial under the legislation of 1868, which expressly provided that, whether the cause of action would survive at common law or not, the case could be revived and proceed to judgment precisely as it might do in cases of contracts. The decision now rendered makes the statute mean just what it would mean, if it did not contain the words " whether the cause of action would survive at common law or not." The court holds that an action cannot be revived and prosecuted to judgment and execution if the cause of action be one that would not have survived at common law ; and this, notwithstanding the statute, in plain words, says that the inquiry " whether the cause of action would survive at common law or not," is immaterial.

It is said that this conclusion cannot be sustained with due regard to the decisions of the Supreme Court of Appeals of West Virginia. The case particularly relied on in support of this contention is *Cunningham* v. *Sayre*, 21 W. Va. 440, 444. There death occurred before the verdict, and the question was whether an action for unlawful entry and detainer abated upon the death of the plaintiff. The court held that the action did not abate, and its decision of that point is expressed in the syllabus. As the constitution of the State makes it the duty of the court " *to prepare a syllabus of the points adjudicated in each case,*" the profession in that State look only to the syllabus to ascertain the points in judgment. When, however, we turn to the opinion of the court, nothing, I submit, is found in it justifying the conclusion this court has reached. Referring to the last clause of section 2 of chapter 127 of the Code, the Supreme Court of Appeals of West Virginia said : " It was not the object of the statute to create any new right, and give an action to the heir, devisee, or representative which he

had not at common law." No one supposes that that clause gives a personal representative the right of action to sue for personal injuries to the decedent. The personal representative can bring an original action only where death is caused by the wrongful act or default of the defendant. He does not bring an action where one, rightfully brought by the decedent, is revived in his name as personal representative. But the Supreme Court of Appeals of West Virginia proceeds : " But where the representative, heir, etc., had a right, by suit, to accomplish the same object substantially as the ancestor had in view in bringing the suit, that for convenience it should not abate on the ancestor's death, but might be revived." Even this principle, the statement of which was not at all necessary to the decision, is sufficient to embrace the present case ; for, as the suit of Martin was to recover compensation for the injuries he received, a revivor of it, in the name of his personal representative, and its prosecution to judgment and execution, would accomplish substantially the same object the decedent had in view, namely, to compel the railroad company to pay for the injury inflicted upon him as the result of its negligence.

Another case referred to in support of the contention that the action abated by the death of the plaintiff is *Curry* v. *Mannington*, 23 W. Va. 14, 18. But that case did not involve any question in reference to the revivor of an action for personal injuries received by the plaintiff. It was a suit against a municipal corporation for injuries, alleged to have been received through the neglect of the defendant to keep its streets and walks in repair. It is true that the court, in that case, said : " In the cases, however, of injuries to the *person* and not to the *property* or *estate* of the decedent, whether by assault, battery, false imprisonment, slander, *negligence*, or otherwise, if either the party who received or he who committed the injury die, the maxim applies rigidly, and no action can be supported either by or against his representative. 3 Bl. Com. 302. In this State the only exception to this rule, so far as I have been able to discover, is the provision of our statute, embracing what is known as Lord Campbell's Act,

giving a right of action to the representative against any party wrongfully causing the death of his decedent. §§ 5 and 6, c. 103, Code, p. 545." But it is plain from the context that this language had reference to the meaning of a particular statute of limitations of personal actions, that used the words "if they be for matters of a nature that in case of the *death* of the party, they could not be brought by or against his representative." In effect, the court was considering the question as to whether a personal representative could bring an original action for personal injury received by his decedent. That is an entirely different question from the one here presented, which is, whether an action for the recovery of money duly brought by the person injured could, upon his death, be revived in the name of his personal representative, and be prosecuted by the latter to judgment and execution. There is not a hint, much less a distinct statement, either in the syllabus or in the opinion in *Curry* v. *Mannington,* in respect to any such question.

Suppose Martin had obtained a judgment for ten thousand dollars in damages and had died after the case was brought here by the railroad company. Could it not have been revived in this court against his personal representative? And if this court had reversed such a judgment and remanded the cause for a new trial, could the railroad company have prevented another trial in the court below by the suggestion of record that, pending the writ of error in this court, the plaintiff had died? In my opinion, this question should be answered in the negative, if any effect whatever be given to the local statute. A different rule should not be applied when the case is here upon writ of error sued by the plaintiff.

Reference has been made to the case of *Flinn* v. *Perkins,* 32 Law Journal, (N. S.) Q. B. 10, 11; *S. C.* 8 Jurist, (N. S.) 1177. That was an action to recover damages for a personal injury. The plaintiff died before verdict, and the effort was to have it revived in the name of the personal representative. It was held that the Common Law Procedure Act did not permit the revivor under such circumstances. But that case differs from this in two important particulars: 1, there was

a verdict and judgment in this case before the plaintiff died; 2, there was no provision in the English statute, as there is in the West Virginia Code, giving the right of revivor, where the plaintiff or defendant dies pending the action, "whether the cause of action would survive at common law or not."

But if I am wrong in my interpretation of the Code of West Virginia, there is still another view of this question which, in my judgment, is important. Martin's death occurred after the assignment of errors was filed and made part of the record. In Tidd's Practice, 1163, it is said: "A writ of error may abate by the act of God, the act of law, or the act of the party. If the *plaintiff* in error die before errors assigned, the writ abates, and the defendant in error may thereupon sue out a *scire facias quare executionem non* to recover the judgment against the executors or administrators of the plaintiff in error. But if the plaintiff in error die after errors assigned, it does not abate the writ. In such case the defendant, having joined in error, may proceed to get the judgment affirmed, if not erroneous, but must then revive it against the executors or administrators of the plaintiff in error." And so it was adjudged by this court in *Green* v. *Watkins*, 6 Wheat. 260, 262, in which Mr. Justice Story, speaking for the court, and after referring to the rules that controlled the question of abatement, whether in real or personal actions, where the party died before judgment, said: "But in cases of writs of error upon judgments already rendered a different rule prevails. In personal actions, if the plaintiff in error dies before assignment of error, it is said that by the course of proceedings at common law the writ abates; but if after assignment of errors, it is otherwise." These authorities, I submit, indicate that the writ of error should not be dismissed after there has been an assignment of errors.

Being of opinion that the action has not abated by the death of the plaintiff, I am unable to concur in the opinion and judgment of the court.