**Edward R. Bacon, Appellee, v. Bank of Montreal, Appellant.**

## Gen. No. 25,389.

1. REMOVAL OF CAUSES, § 11*—*when removal is improperly denied.* Removal of a case to the federal court was improperly denied on the ground that the petition came too late, where the declaration had been filed 10 days before the first day of the March term of the circuit court, and the summons was returnable to the first day of that term, which was on the 20th, and under the rules the defendant was required to plead before the opening of court on the morning of the 22nd, and on the 21st an order was entered extending the time to plead to the 31st, followed by other orders extending the time to plead to April 25, and on that day the motion to file the petition which had been filed on March 28 was denied.

2. REMOVAL OF CAUSES, § 11*—*when petition for removal is in apt time.* Under the Federal Judicial Code, ch. 3, sec. 29, providing for the filing of a petition for the removal of a cause from the State court at or before the time the defendant is required by the State laws or the rule of the State court to plead, and section 44 of the Illinois Practice Act (J. & A. ¶ 8581), providing that on the appearance of the defendant, the court may allow such time to plead as may be deemed reasonable or necessary, and circuit court rule 1, requiring defendant to plead before the opening of court on the morning of the third day of the term for which the process was served, and that defendant may be defaulted unless the party has obtained an extension, the defendant's plea was not due until the expiration of the time fixed by the order extending the time to plead; and the petition for removal in question, which was filed after the third day from the first day of the term, but before the expiration of the time granted by the extension order, was in apt time.

3. REMOVAL OF CAUSES, § 10*—*where petition may be amended as to formal defects.* Amendment to cure formal defects in a petition for removal to the federal court, where upon the face of the petition and of the whole record sufficient grounds for removal are shown, may be made either in the State or the federal court.

4. REMOVAL OF CAUSES, § 7*—*how right to remove is determined.* In reaching a decision on the question whether removal of a case to the federal court was proper or not, the Appellate Court must

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

consider not only the early federal statute, but the laws of Illinois and the rules of the circuit court.

5. BANKS AND BANKING, § 146*—*what must be proved to recover on forged checks.* In an action by a depositor against a bank to recover the amount of twenty-two checks claimed to have been forged by plaintiff's manager, and paid by the bank, where the signature on two of the checks was admitted to have been forged, it was error to enter judgment for the total of all the checks, where the other twenty were not produced, and could therefore not be compared with other genuine signatures of such manager.

6. BANKS AND BANKING, § 146*—*when forgery is question for jury.* In an action by a depositor against a bank to recover the amount of twenty-two checks, claimed to have been forged by plaintiff's manager and paid by the bank, where the signature to two of the checks was admitted, the court erred in directing a verdict for the plaintiff for the total of all the checks, as under the facts and circumstances the issue whether the twenty checks bore the genuine or forged signature of plaintiff should have been submitted to the jury.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded. Opinion filed October 13, 1920.

FISHER, BOYDEN, KALES & BELL, for appellant; AL-BERT M. KALES, J. F. DAMMANN, JR. and J. RALPH TASCHER, of counsel.

MOSES, ROSENTHAL & KENNEDY, for appellee; WALTER BACHRACH and HENRY JACKSON DARBY, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $30,054.10 rendered May 6, 1919, by the circuit court of Cook county against the defendant, Bank of Montreal, on the second trial of the cause. At the conclusion of the hearing, the court instructed the jury to find the issues for the plaintiff, Edward R. Bacon, and to assess

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

plaintiff's damages at said amount, and they accordingly returned such a verdict. On the first trial in July, 1918, a verdict was returned for the plaintiff in the sum of $640, but a new trial was granted. On said second trial the entire evidence heard on the first trial, no more and no less, was introduced under a stipulation, hereinafter more particularly mentioned.

By the action, which is in assumpsit, plaintiff sought to recover for sums of money paid out by the defendant bank and charged to plaintiff's account with the bank, in which he was a depositor, on twenty-two checks. It was claimed that plaintiff's signature thereon was forged. The defendant admitted that plaintiff's signature on the last two checks for $320 each, dated respectively April 6, 1912 and April 13, 1912, was forged by Otto Reichelt; plaintiff's confidential clerk and office manager, by means of a rubber or steel facsimile of said signature. One of the issues of fact in the case was whether the other and remaining twenty checks bore plaintiff's genuine or forged signature. The amount of the verdict of the jury in the first trial is the aggregate sum of said last two checks. Plaintiff was engaged in the cash grain business and was a member of the Chicago Board of Trade, and his account with the defendant bank was an active one extending over a period of several years. He was a citizen of Illinois. The defendant was a Canadian corporation, with a branch bank in Chicago. Before the defendant pleaded to the action it moved for the removal of the cause to the District Court of the United States for the Northern District of Illinois, Eastern Division, but the application was refused.

The stipulation under which the second trial was had, after providing for the making up of a transcript of the evidence taken at the first trial, together with the objections there made and the rulings of the court thereon, and after providing that this transcript should

be received as the sole evidence upon the new trial, provides *inter alia:*

"In case the court shall upon the new trial   *   *   * before a jury direct a verdict for the plaintiff as to all the items of the plaintiff's claim and a judgment be entered thereon, then if said judgment be taken by appeal by the defendant to the Appellate Court for the First District and

"(A) said judgment be there reversed and the cause remanded for a new trial because any one or more of the following·issues of fact should have been left by the court to the jury, namely:

"(1)   Whether the checks in question (except the last two) bore the genuine or forged signature of the plaintiff,

"(2)   Whether the plaintiff, as claimed by the defendant, left checks signed in blank, and if so whether such act constituted want of due care, or

"(3)   Whether the plaintiff failed to use due care, as is claimed by the defendant, in supervising the duties of his agent Reichelt in receiving and checking the checks and statements returned by the defendant and whether such negligence (if any) was the proximate cause of the loss resulting from the honoring of checks subsequent to May 30, 1910, or

"(B) if said judgment be reversed and the cause remanded with directions to remove it to the United States Court for trial pursuant to the motion made therefor on behalf of the defendant, THEN IT IS AGREED AND STIPULATED by and between the parties hereto that the Appellate Court shall,   *   *   *   thereupon enter a judgment in that court for the defendant on all the items of the plaintiff's claim except the last two for $320 each, with interest, and shall thereupon enter judgment in the Appellate Court for the plaintiff for $640 and interest; or if the Appellate Court should hold·that it had no jurisdiction or power, or if it for any other reason refused to enter such judgment in that court pursuant to this stipulation, then the trial court upon the remanding of this cause to the Circuit Court shall enter a judgment in·that court for the de-

fendant on all the items of the plaintiff's claim except the last two for $320 each, with interest and costs, and shall thereupon enter judgment in that court for the plaintiff for $640 with interest and costs, and the plaintiff in the event set out hereby in consideration of the entering into this stipulation releases and agrees to release the defendant from all liability arising from the cause or causes of action herein in question except the liability for the sum of $640 with interests and costs."

The action was commenced on February 16, 1916, on which day a summons was issued by the clerk returnable on the third Monday of March, 1916, being March 20. The summons was served on the defendant on February 18, 1916. Plaintiff's declaration, consisting of the common counts, was filed on March 10, 1916, ten days before the return day. On Tuesday, March 21, defendant filed its appearance by an attorney, and on the same day, on motion of the attorney for defendant, the court ordered that the time within which defendant should plead or demur be extended to and including March 31. On March 28, before the expiration of said time to plead or demur as so extended, and in pursuance to due notice served on plaintiff's attorney on March 27, the defendant's attorney appeared and by leave of court filed the petition and bond of the defendant for removal of the cause to said United States court, setting up the diverse citizenship of the parties, and the court entered defendant's motion for said removal and continued the same to March 31, on which last mentioned day both parties by their respective attorneys again appeared and, on motion of defendant's attorney, the court further extended defendant's time to plead or demur to April 17, and gave defendant leave to amend its said petition and bond for removal "by attaching thereto certificate of magistracy and certificate of the secretary of corporation, defendant." On April 17, on motion of defendant's attorney, the

court further extended defendant's time to plead or demur to April 25. On April 22, after argument, the defendant's motion to remove the cause was denied and defendant excepted and in due time filed its bill of exceptions. On April 25, after refusal of said motion, defendant filed pleas of the general issue and statute of limitations. On May 22, by leave of court, defendant filed two special pleas setting up an election by Bacon to ratify the acts of Reichelt in securing money from defendant bank on the checks in question and to hold Reichelt liable to Bacon in two suits prosecuted by Bacon against Reichelt in the circuit court of Cook county. These two special pleas were subsequently withdrawn by agreement and defendant was given leave to make any defenses indicated by said pleas under the plea of the general issue.

*First.* It is contended by counsel for defendant that the trial court erred in refusing to allow the removal of the cause to the United States court.

If the trial court so erred, the point, under the provisions of the stipulation above mentioned, is decisive of the case. And, as the point is duly saved upon the present record, it can be reviewed in this Appellate Court; and were it not for the stipulation could be reviewed in the Supreme Courts of this State and of the United States. (*Stone v. South Carolina,* 117 U. S. 430, 432; *Powers v. Chesapeake & O. Ry. Co.,* 169 U. S. 92, 102.) And defendant, by filing pleas to the merits and making a defense after the denial of its motion for removal, did not lose or impair its right to have the point reviewed in this Appellate Court. (*Powers v. Chesapeake & O. Ry. Co., supra; Removal Cases,* 100 U. S. 457, 475.)

The Federal Judicial Code, ch. 3, sec. 29, provides that the party-desiring to remove the suit from a State court to the District Court of the United States, may make and file a petition, duly verified, in such suit in such State court "at the time, or any time before the

defendant is required by the laws of the State or the rule of the State court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff, * * *." Section 44 of the Illinois Practice Act (J. & A. ¶ 8581) provides: "On the appearance of the defendant or defendants, the court may allow such time to plead as may be deemed reasonable and necessary." As disclosed from the special bill of exceptions in the present record, rule 1 of the circuit court of Cook county, as to time to plead, is as follows:

"In all suits at law made returnable to any term of the court where process has been duly served and declaration filed ten days before the first day of the term, the defendant shall plead or demur before the opening of the court on the morning of the third day, and the plaintiff shall be entitled to judgment by default in all suits where the plea or demurrer is not so filed, *unless the party has obtained an extension of the rule so as to plead or demur. * * *"*

In commenting on said section 29 of the Federal Judicial Code, the Supreme Court of the United States (*Kansas City, Ft. S. & M. R. Co. v. Daughtry,* 138 U. S. 298, 303) has said: "The statute is imperative that the application to remove must be made when the plea is due," unaffected by any inaction on the part of the plaintiff.

The question is: When, by the laws of the State of Illinois or by the provisions of rule 1 of the circuit court of Cook county was the defendant in the present case required to plead to plaintiff's declaration? In other words, when was its plea due? The summons was made returnable to the March term, 1916, of the circuit court, the first day of which term was March 20. The defendant had been duly served, and plaintiff's declaration had been filed, 10 days before March 20. Under said rule 1, the defendant should plead before the opening of court on the morning of Wednesday, March 22, *unless* it had obtained an extension of the

rule to plead. Prior to March 22, to wit, on March 21, the defendant filed its appearance and on its motion obtained such an extension, viz., to March 31. Such procedure was in accordance with said section 44 of the Illinois Practice Act as well as in accordance with said rule 1 of said circuit court. Prior to March 31, to wit, on March 28, defendant made and filed its petition and bond and moved the court for a removal of the cause to said United States court, and the court entered the motion and continued it for hearing to a future day. Was defendant required to plead to plaintiff's declaration on March 22 or on March 31, the day to which the time was extended by order of the court?

Counsel for defendant argue that, by virtue of the provisions of said rule 1, the time for a defendant to plead does not arrive absolutely and finally on the third day of the term, but only arrives on that day if no motion is made and no order entered to extend the time to plead, and that, where before the third day of the term such defendant enters his appearance and makes a motion for an extension of the time to plead and an order is entered, the time to plead does not arrive until the time mentioned in said order. Counsel for plaintiff argue to the contrary, and urge that the phrase ''or the *rule* of the State court,'' contained in said section 29 of the Federal Judicial Code, manifestly refers to a standing or fixed rule of court, applicable to all cases, and not to a special case where an order of extension of time to plead is obtained.

The statements of the textbook writers and the decisions of the United States district and circuit courts on the question are not in harmony. We are not aware of, and our attention has not been called to, any case in the Supreme Court of this State or of the United States where the precise question has been decided. In 2 Foster's Federal Practice (5th Ed.), sec. 543, page 1817, it is said:

''The preponderance of authority supports the proposition: that if the defendant's time to plead or answer has been, before its expiration, extended by an order of the State court, or by a stipulation authorized by a State statute or court rule, his time to remove is likewise extended.''

In Black's Dillon on Removal of Causes (Ed. 1898), sec. 156, it is said:

''In respect to the effect on the right of removal of an extension of the time allowed the defendant to plead or answer, the authorities are in much apparent conflict. It is possible, however, to extract some general rules which may be said to be fairly well established by a preponderance of authority. In the first place, an extension of the time to answer by mere consent of the parties out of court, that is, by a stipulation or agreement or understanding not having the sanction of an order of court, will not extend the time for filing a petition for removal of the case.  *  *  *  But on the other hand, if the laws of the State and the established practice of its courts require that the defendant shall plead or answer within a certain limited time, 'unless such time shall be extended by order of court' (or words to that effect), then it seems that an extension of time for answering, granted by an order of the court, will correspondingly lengthen the time within which a petition for removal may be filed. Yet there are some authorities which do not admit this; they hold that such an order of court is not a 'rule' of the State court, within the meaning of the removal act.''

In 23 Ruling Case Law, sec. 124, page 742, the author seemingly disagrees with Foster and Judge Dillon, when he says:

''And a majority of the courts also hold that the reference in the federal statute to the rule of the State court as to time to answer or plead relates, not to special orders granted upon application or stipulations of parties in any given case, but rather to a general rule fixing the date at which all defendants are re-

quired to appear in order to avoid being held in default. A leading purpose of the Judiciary Act óf 1887-1888, and of Judicial Code, sec. 29, was to contract the jurisdiction of federal trial courts, both original and by removal, and to relieve those courts of part of their excessive burden.''

Among the many cases cited by counsel for plaintiff to support their contention that defendant's application for a removal of the cause to the United States court came too late may be mentioned: *Kaitel v. Wylie*, 38 Fed. 865; *Rock Island Nat. Bank v. J. S. Keator Lumber Co.*, 52 Fed. 897; *Velie v. Manufacturers' Acc. Indemnity Co.*, 40 Fed. 545; and *Daugherty v. Western Union Tel. Co.*, 61 Fed. 138. All of these cases were decided by judges of the United States courts in the Seventh Judicial Circuit—the first two by Judge Blodgett of Illinois, the *Velie* case by Judge Jenkins of Wisconsin and the *Daugherty* case by Judge Baker of Indiana. We think they are all to be distinguished from the present case. In the *Wylie, Keator Lumber Co.* and *Daugherty* cases the time to plead had gone by before either there was an order entered extending the time to plead or the petition for removal was filed. In the *Velie* case, before an answer was due, the defendant obtained a stipulation from the plaintiff extending the time to plead, but no order was entered upon it and under the practice of Wisconsin the stipulation did not operate as an order to extend the time to plead, and subsequently but before the expiration of the time to plead, as per the stipulation, the petition for removal was filed and it was held that it was filed too late.

Among the many cases similar to the present case, cited by counsel for defendant to support their contention are: *Rycroft v. Green* (Cir. Ct., S. Dist. N. Y.), 49 Fed. 177; *Lord v. Lehigh Val. R. Co.* (Cir. Ct., E. Dist. N. Y.), 104 Fed. 929; *Avent v. Deep River Lumber Co.* (Cir. Ct., E. Dist. N. C.), 174 Fed. 298;

and *Wilcox & Gibbs Guano Co. v. Phoenix Ins. Co.* (Cir. Ct., ·Dist. S. C.), 60 Fed. 929. In the *Rycroft* case, Circuit Judge Lacombe states it to be the law and practice of the Second U. S. Judicial Circuit "that an extension of time to answer by order of court, whether made on stipulation or not, extends the time for removal." He adds: "This was settled practice here ·before the decisions in other circuits, * * * and, in view of what an 'extension of time to answer' is under Code rules and practice of the courts of this State, seems conformable alike to the letter and spirit of the removal act." In the *Lord* case, *supra,* the proceedings to remove the action from a court of the State of New York to the federal court were instituted after the granting of an order extending the time to answer, and, upon a motion made in the federal court to remand, it was urged that the petition for removal must be filed at or before the defendant is required to plead by the "rule" of the State court, and that an order extending the time to answer was not such a "rule," but the motion to remand was denied, the court saying that such decision was in accord, not only with the settled practice of the U. S. courts of the Second Circuit, but also in accord with decisions made by U. S. courts sitting in the States of South Carolina, Tennessee and Nevada. In the *Avent* case, *supra,* it appears that under the Code of Civil Procedure of the State of North Carolina, a defendant is required to answer or demur to plaintiff's complaint on or before the last day of the term to which the summons is returned, "unless the time therefor be extended by the judge." July 30, 1909, was the last day of the July term, 1909, of the superior court of Lee county, in said State, to which term of court the defendant had been summoned to appear. On said July 30, the court entered an order of record giving the defendant 40 days to file an answer. On August 10, within said 40 days' ex-

tension, the defendant filed his petition and bond for removal of the cause to the United States District Court, on account of diverse citizenship of the parties, but the State court refused the petition. On September 6, the defendant procured an order from said United States court directing the removal of the cause. On November 1, the plaintiff made a motion in said United States court to remand the cause to the State court on the ground that defendant's original petition for removal had not been filed within the time prescribed by section 29 of the Federal Judicial Code. The motion to remand was denied, the court holding that the petition, being filed before the expiration of the time to answer as extended by the judge, was filed in time.

Counsel for defendant also cite several cases, decided by United States courts in different judicial circuits, where it appeared that, before the original time to plead had arrived, the defendant or his attorney secured a stipulation from plaintiff's attorney for an extension of time in which to plead, and where it also appeared that under the statutes and the practice of the State courts, in which the actions were commenced, such a stipulation was as effective as an order of court to give the defendant such extension of time. In these cases it was held that the petition for removal, filed after the original time to plead had expired but before the time as extended had expired, was not filed too late. Some of the cases cited, and others, are: *People's Bank v. Aetna Ins. Co.* (Cir. Ct., Dist. S. C.), 53 Fed. 161; *Chiatovich v. Hanchett* (Cir. Ct., Dist. Nev.), 78 Fed. 193; *Tevis v. Palatine Ins. Co.* (Cir. Ct., N. Dist. Cal.), 149 Fed. 560; *Citizens' Trust & Savings Bank v. Hobbs* (Dist. Ct., So. Dist. Cal.), 253 Fed. 479; *Hansford v. Stone-Ordean-Wells Co.* (Dist. Ct., Mont.), 201 Fed. 185. In the case last cited it appears that on September 28, 1912, a summons from a State court of Montana was served on the defendant;

that on October 17, one day before defendant was required to plead to the complaint, the parties by counsel stipulated and agreed in writing, that day filed in the State court, that defendant could have to and including October 28 within which to appear and plead; that on October 26 the defendant filed a petition and bond for the removal of the cause, and on October 28 the State court ordered its removal; and that the plaintiff subsequently moved the United States court to remand the cause to the State court on the ground that the removal was not timely, which motion was denied. The court says (p. 186):

"The laws of Montana and the rule of the said State court authorize stipulations for extension of time like unto that herein. No order of court is necessary to vitalize them. They operate *proprio vigore*. Their effect is that the defendant is not 'required' to answer or plead to the complaint until at the time when the stipulated time is on the point of expiration, and such is the effect of the stipulation in this case. No default could have been entered against the defendant until after that time. 'Required' in the removal act has reference to the time when the defendant to avoid any default must necessarily answer or plead to the complaint. Until that time comes and at it, whether fixed by statute, by rule, or by agreement between the parties, whether it is the time originally limited or that time extended, the right of removal continues, and can be exercised. * * * The federal law and the State law must be read together. The former prescribes a limitation; the latter the extent of it. From the language of the removal act, all this would seem a necessary conclusion. And it accomplishes the object of the limitation, viz., that all defendant's pleas may necessarily be determined in the federal court. * * * It will be remembered the time for removal is not jurisdictional, but is a rule of limitation, and, like most limitations, may be subject to waiver and estoppel, express or implied. *Martin v. Railway Co.,* 151 U. S. 673, 688, and cases cited."

In Hughes on Federal Procedure (1904), sec. 130, page 334, the author says:

"The question whether an extension of time within which the defendant shall answer extends the time for filing the petition is one in which the decisions are in great conflict.   *   *   *   The decisions in the different districts on this point are necessarily largely governed by the practice of the States in which the decisions are rendered.   The case of *Martin v. Railway Co.*, 151 U. S. 673, seems to establish that the petition must be filed before any judgment or default, even conditional in its nature, is entered against the defendant.   Hence on principle, the proper doctrine appears to be that if, at the time the extension is granted, no judgment by default has been entered against the defendant, and if the effect of the extension is that no judgment by default can be entered until the period of extension expires, then the defendant can file his petition during such extension."

Counsel for plaintiff make the point that defendant's petition was properly denied for the reason that it was not complete when originally filed; that the trial court, on March 31, 1916, on defendant's motion, gave it leave to amend the petition and bond by attaching thereto certain certificates to cure formal defects; and that because of said motion defendant invoked the jurisdiction of the State court and submitted itself thereto.   We do not think that the point is well taken. Amendments to cure formal defects, where upon the face of the petition and of the whole record sufficient grounds for removal are shown, may be made either in the State court or in the federal court. (*Chase v. Erhardt*, 198 Fed. 305, 307; *Deford, Hinkle & Co. v. Mehaffy*, 13 Fed. 481, 486; *Overman Wheel Co. v. Pope Mfg. Co.*, 46 Fed. 577, 580; *Powers v. Chesapeake & O. Ry. Co.*, 169 U. S. 92, 101.)

Counsel for plaintiff argue that the cases, above referred to, of the federal courts of the Seventh Judicial Circuit should be followed by this Appellate Court in

the present case.  But, as above mentioned, those cases are to be distinguished from the present case.  Furthermore, in reaching a decision of the question here involved, we must consider not only the federal statute, but the laws of Illinois and said rule 1.  As said in *Hansford v. Stone-Ordean-Wells Co., supra:*  "The federal law and the State law must be read together. The former prescribes a limitation; the latter the extent of it."  Under the facts of the present case, and in the light of the decisions of the federal courts (in Judicial Circuits other than the Seventh), and construing the provisions of rule 1 of the circuit court of Cook county, we are of the opinion that defendant's petition for removal was timely and that the trial court erred in not granting it.

*Second.*  While we think that the trial court erred in refusing to allow the removal of the cause to the United States court and that that error, under the stipulation above referred to, is decisive of the case, we nevertheless have considered another contention of counsel for defendant, urged as a ground for reversal, viz., that the trial court erred in not submitting to the jury the issue whether the twenty checks (of the twenty-two in question) bore the genuine or forged signature of the plaintiff.  The defendant admitted that plaintiff's signature on the last two checks for $320 each, dated respectively April 6 and April 13, 1912, was forged by Otto Reichelt, plaintiff's confidential clerk and office manager, by means of a rubber or steel facsimile, but defendant denied the plaintiff's signature on the other twenty checks was forged.

The twenty checks were not produced and plaintiff's signature on each, therefore, could not be compared with other genuine signatures of his.  The evidence of the alleged forgeries was largely circumstantial.  It appears that at various times between May 5, 1910 and March 29, 1912, inclusive, Reichelt made certain false entries in plaintiff's books and check stubs; that cer-

tain bank checks not appearing in order on the stubs went through the bank, and that Reichelt received the money on some of the checks and converted it to his own use.    Of the twenty checks seven, aggregating $17,890.76, were certified by the bank and on five of these at least Reichelt received the money; and twelve, aggregating $4,149.84, were paid in cash over the bank's counter, but evidence was lacking that Reichelt converted the proceeds of these checks to his own use or that the proceeds were not used in plaintiff's business.    Plaintiff testified that he did not sign any one of the twenty checks, but there are circumstances in evidence tending to the conclusion that this statement was merely his opinion, based upon facts disclosed to him by an auditor who made an examination of plaintiff's books after the forgery of the last two checks was discovered.    The bank tellers, on the other hand, who had paid the cashed checks or who had certified the certified checks, testified from memoranda made at the time said checks were cashed or certified that they had then examined said checks and were of the opinion that the same bore the genuine signature of plaintiff.    It further appears that plaintiff was out of town for periods varying from one week to two weeks during the months of May, 1910, February, 1911, June, 1911, August, 1911, November, 1911, and February, 1912.    While away his business went on as usual. His trades on the Board of Trade were settled by checks signed by Lamson Brothers, Board of Trade bankers.    At the end of each day, or at the end of the second day, Lamson Brothers received a check, signed by plaintiff and drawn on the defendant bank, for the total of the checks issued by them to cover said trade, or in some instances a check for a considerable amount on account.    This method was accomplished by plaintiff signing a number of checks before he left town, payable to the order of Lamson Brothers but with the amount of the check left blank.    Reichelt, who had

written the name of the payee on said checks, afterwards and before delivering any check to Lamson Brothers also wrote in the amount. There was evidence tending to show that plaintiff, prior to going out of town, sometimes signed more checks with the amount left blank than were used during his absence and also that plaintiff sometimes signed some checks with both the payee and the amount left blank. The unused checks were supposed to be destroyed on plaintiff's return, but there was evidence tending to show that sometimes they were not. The evidence also tended to show that the defendant was not guilty of any negligence in paying the twenty checks claimed to have been forged, and that plaintiff failed to use due care in supervising the acts of Reichelt in receiving and checking over the returned checks and bank statements. It was the custom for the bank, on the 1st and 15th of each month during the period in question, to render a statement of account to plaintiff and to return to him all checks which had been paid and debited to his account. Plaintiff had authorized Reichelt, as his agent, to receive and receipt for said canceled checks and statements, and during the period in question Reichelt did so. Plaintiff did not himself examine any of said canceled checks and statements until after Reichelt had confessed to the forgery of the last two checks, aggregating $640 and paid in April, 1912.

Under all the facts and circumstances in evidence we have reached the conclusion, as to said second point, that the court erred in directing a verdict for the plaintiff, and in not submitting to the jury the issue whether the twenty checks in question bore the genuine or forged signature of the plaintiff. Other points, relied upon as grounds for a reversal, are made by counsel for defendant, but in view of our holding as above it is not necessary to consider them.

For the reasons indicated the judgment of the circuit court is reversed and the cause is remanded for further proceedings in accordance with the provisions of the above-mentioned stipulation of the parties.

*Reversed and remanded.*

BARNES, P. J. and MATCHETT, J., concur.